340 So.2d 421 (1976)
Fred T. PERRIN
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.
No. 7739.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1976.
*422 Lawrence J. Smith and Robert J. Young, Jr., Joseph R. McMahon, Edward L. Levert, Jr., New Orleans, for Fred T. Perrin, plaintiff-appellant.
H. Martin Hunley, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for Dr. Earl J. Rozas, Dr. Raymond E. Horn, Jr., Dr. Kenneth A. Briggs, and St. Paul Fire & Marine Ins. Co., defendants-appellees.
Henry B. Alsobrook, Jr., Harold A. Thomas, New Orleans, for West Jefferson General Hospital, Argonaut-Southwest Ins. Co., Marguerite Lomonaco, Effie Danten, and Claire Smith, defendants-appellees.
Before SAMUEL, BOUTALL and MORIAL, JJ.
BOUTALL, Judge.
This is a malpractice suit arising from the actions taken by the defendants in treating plaintiff's severe knee injury that resulted in leg amputation of the injured leg. There was a trial by jury from which the jury returned a unanimous verdict finding the defendants not guilty of negligence. From that verdict the plaintiff appeals.
Plaintiff, a marine surveyor, shot himself in the left knee while at his home on March 5, 1972. The blast, from pointblank range by a 12 gauge shotgun destroyed much of the bone, blood vessels and ligaments of the knee, and the pellets embedded themselves deeply in the tissue.
The first attempt to save the leg occurred in the emergency room of West Jefferson Hospital where Dr. Earl Rozas, a defendant orthopedist, performed a debridement or cleaning of the wounded area and removed most of the pellets. Later, on October 9, 1972, Dr. Rozas, assisted by defendant Dr. Raymond Horn, Jr., also an orthopedist, performed a surgical procedure known as a Charnley fusion in an attempt to save the leg and make it more stable. When it was found that the plaintiff's leg was not responding satisfactorily, on June 20, 1973, a slot graft fusion was performed on the damaged leg in the hope of a desired result of a stiff, but stable leg.
After the slot graft fusion operation, the plaintiff's leg was bandaged and immobilized in a cast. To combat any possible infection, an antibiotic, garamycin, was administered to the plaintiff. The cast and bandage were left in place and not opened until July 3, 1973, a period of thirteen days. Upon opening the surgical dressing, the defendant *423 doctors, Drs. Horn, Rozas and Kenneth Briggs, noted evidence of infection. Attempts to combat the infection with the antibiotics garamycin and keflex were not successful and the plaintiff chose to have the leg amputated rather than attempt further surgery.
Suit was brought to recover damages for the alleged negligence of Drs. Horn, Rozas and Briggs, West Jefferson Hospital and three nurses, Marguerite Lomonaco, Effie Danten and Claire Smith, and the hospital's insurer, Argonaut-Southwest Insurance Company. The plaintiff alleges that the physicians were negligent in failing to open the surgical dressing timely and discover the infection at an earlier date, which would have allowed the infection to be combatted effectively; the physicians failed to take note of the plaintiff's rising temperature after the grafting operation, to perform a white cell blood count or to check the lymph glands; and the nurses were negligent in failing to take note of an odor emanating from the wounded area which would indicate that an infection was present.[1]
On appeal the plaintiff contends that he proved a prima facie case of negligence with a preponderance of evidence and that the defendants failed to meet the required burden that they prove themselves free from negligence. Plaintiff contends that the evidence offered by defendants at trial on the merits was entirely self-serving and that the jury erroneously accepted that evidence when it found the defendants to have not been negligent.
We preface our discussion of the merits of this appeal by reiterating that a jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence and/or its application of law is clearly erroneous. Garrison v. Hotel Dieu, La.App., 319 So.2d 557 (1975); Duray v. Continental Insurance Company, La.App., 311 So.2d 491 (1975). Thus, in this appeal we must consider if the verdict was supported by the evidence and/or the law was correctly applied.
It is plaintiff's contention that the defendant physicians failed to exercise the skill ordinarily employed in the treatment of such injuries by their failure to timely discover the infection. In support of this proposition, he offered Dr. David Aiken as an expert in the field of general surgery to establish the standard for treatment of post operative patients.
Dr. Aiken opined that the standard of care was not met by the defendants because the hospital records did not disclose that a white blood cell count was made or check of the lymph glands occurred. He stated these tests would likely have given notice of an infection being present in the operative area. However, on cross examination, Dr. Aiken acknowledged that he did not know the body responses to a bone graft and that such was not in his field of expertise, and the attending physician would have a better appreciation of the condition of the patient. Further, Dr. Aiken, a general surgeon and not an orthopedist, testified that he had never treated a patient post-operatively from this type of surgery. Dr. Aiken stated that orthopedics was a separate distinct field from general surgery and that his testimony was based upon general surgical practices and care, not involving fusiontype orthopedic surgery.
To offset the testimony of Dr. Aiken and to show the reasonableness of their course of treatment, the defendants called upon Dr. Jack Winters, an expert in the field of orthopedics.
Dr. Winters had seen the plaintiff prior to the amputation, at the defendants' request, for his consultation in the matter. Dr. Winters testified that the treatment and convalescent care afforded the plaintiff were reasonable and the judgments made were appropriate in this case. Dr. Winters *424 refuted plaintiff's claim that odor should have the defendants on notice that an infection was setting in when he stated that an odor was normal due to the excessive drainage that results from that type of operation. In contravention to Dr. Aiken's testimony, Dr. Winters testified that a white blood cell count taken after the graft operation would not be of value because body tissue had been damaged by the accident and subsequent grafting procedure, thereby causing large numbers of white blood cells to be present in the blood during the postoperative period. As for plaintiff's allegation that the surgical dressing and cast should have been opened prior to 14 days post-operative, Dr. Winters testified that it is common practice in orthopedic surgery to wait two weeks to open the dressing and supportive cast so that the leg will be immobilized and the proper fusion will occur, as well as to lessen the chance for external infection.
The plaintiff contends that Dr. Winters' testimony was self serving and not entitled to full credibility due to his consultant status. Plaintiff relies upon L.C.C. article 2282:
"The circumstance of the witness being a relation, a party to the cause, interested in the result of the suit, or in the actual service or salary of one of the parties, is not a sufficient cause to consider the witness as incompetent, but may, according to circumstances, diminish the extent of his credibility."
This court notes that article 2282 does not consider an interested witness incompetent, but subject only to diminished credibility according to the circumstances. In Dr. Winters' situation, we can only see his interest in the suit to be infinitesimal, and thus entitled to no diminished credibility.
Considering the plaintiff's contention in view of the testimony of Dr. Aiken and Dr. Winters, as well as the testimony of the defendant doctors and nurses, it is apparent to this court that the amputation of the plaintiff's leg did not result from negligence of the defendants. Plaintiff failed to prove his case by the evidence presented to the jury and the evidence supports the jury's verdict.
The record convinces us that the defendants showed that they possessed and exercised the skill ordinarily employed under similar circumstances by orthopedists in the community and that they used reasonable care and their best judgment. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953). A physician is not an insurer of the results of treatment afforded a patient. Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963). Accordingly, the judgment for the defendants is affirmed.
AFFIRMED.
NOTES
[1] The nurses, employees of West Jefferson Hospital, testified that they were trained to detect infectious odors and to distinguish the odor of infection from the odor of drainage of a surgical site, and there was never an infectious odor in plaintiff's room while the cast and dressing were in place, but only the odor of drainage from the sites of the graft.