SWIFT, Judge.
The First National Bank of Crowley (the Bank) instituted this action to recover from Green Garden Processing Company, Inc. (Green Garden) and three individual guarantors an indebtedness due by the defendant corporation to the Bank and for recognition of a collateral mortgage executed by Green Garden.
On June 4, 1975, each of the three individual guarantors, Pierre Jules Maraist, James B. Blackburn and John R. Leeper, signed separate but identical documents labeled a “Continuing Guaranty” up to the amount of $86,350.00. After suit was filed Mr. Leeper received a discharge in bankruptcy and Mr. Blackburn settled with the Bank for $33,000.00. The plaintiff then proceeded to trial before a jury on its claim against Mr. Maraist only.[1] A verdict was *1296 returned in favor of the Bank for $33,000.00 and the trial judge signed a judgment in such amount against Maraist on September 28,1978. The plaintiff appealed, seeking an increase in the award to the full amount of its guaranty. Maraist answered the appeal, asking that the judgment be reversed. He contends, among other things, that his contract of guaranty was invalid for lack of consideration.
The principal issues on this appeal are whether there was valid consideration to support Mr. Maraist’s contract of continuing guaranty and, if so, what amount is the Bank entitled to recover from that defendant?
In 1974 John R. Leeper, as president of Green Garden, began negotiations with the Bank and the Farmer’s Home Administration (FHA) to obtain an FHA guaranteed loan to finance the operation of the corporation. A conditional FHA commitment dated March 19, 1975, was obtained by the Bank setting forth certain conditions which had to be met before the FHA would guarantee the loan. One of the conditions was that the loan had to be guaranteed by all shareholders of the corporation who owned 20% of its stock.
Mr. Maraist was not a stockholder at that time, but contemplated owning a 20% interest in the corporation. He therefore sought to limit his guaranty to 20% of the loan. However, FHA declined to waive the requirement of a full guaranty by the stockholders.
On April 8, 1975, Green Garden through its president, Mr. Leeper, executed a collateral mortgage note for $86,350.00 payable to future holder or holders which was secured by a mortgage on four tracts of land and other property belonging to the corporation.
Thereafter Maraist, Leeper and Blackburn each executed continuing guaranty agreements in favor of the Bank for $86,-350.00 in which each bound himself in solido with the principal debtor, Green Garden.
The conditional FHA commitment expired in July of 1975 without all of its requirements being complied with. Negotiations were begun in January of 1976 to extend the commitment but they were never completed.
In the latter part of 1975 Mr. Leeper abandoned the business and Mr. Maraist assumed the position of president and attempted to salvage the corporation. In January of 1977 he contacted the FHA to discuss the loan application. It was agreed that a new application should be submitted but apparently nothing further was done in this regard.
On May 2, 1977, Maraist as president of Green Garden executed a promissory note in favor of the Bank for $116,724.00 payable on demand or if no demand in 60 monthly installments. The note contained the following notation:
“This note is secured byacont (sic) guar-from (sic) each in the amount$86,350.00 Jules Maraist,. James Blackburn and John Leeper and a S/M (sic) in the same amount.”
Mr. Maraist contends that he signed the continuing guaranty solely for the purpose of meeting the requirements for obtaining FHA guaranty of loans made to the principal debtor, Green Garden. Since the Bank failed to obtain the FHA guarantee after the conditions were met, the consideration for his signing the continuing guaranty failed.
Maraist testified that it was his understanding that if the FHA guaranty was obtained he would incur no personal liability in the event the corporation failed to repay the loans. He stated it was his belief that the FHA would absorb the loss in such a situation and would take no action against the individual guarantors.
Nimrod Andrews, the state director of FHA, outlined the process which occurs when a debtor defaults on an FHA guaranteed loan. He said that the FHA was at liberty to select its method of repayment. Normally, the lender would be instructed to liquidate all assets of the debtor corporation which had been pledged to secure the debt. If a balance remained the lender would be asked to execute on the personal guaran *1297 ties. Once these were exhausted, if any portion of the debt remained, the FHA would reimburse the lender for the loss up to the amount of its guaranty.
Michael McBride, a vice-president and loan officer at the First National Bank of Crowley, testified that he was present when Mr. Maraist signed the continuing guaranty. He said he personally informed Mr. Maraist before he signed the instrument that he would be personally liable for $86,-350.00 if the corporation defaulted on the loan. The continuing guaranty expressly provides that it is given:
“In consideration of the First National Bank of Crowley . . giving or extending terms of credit to Green Garden Processing Company, Inc. . . . ”
Clearly, the true consideration for which Maraist signed the guaranty was to obtain a loan or loans from the Bank which Green Garden could use in its business. While it may be true that Maraist contemplated obtaining a FHA guaranty for a loan, the testimony shows that his personal liability would not be affected by such guaranty. There was no evidence that Maraist was in any way misled as to the liability he might incur by signing the continuing guaranty. In fact there was testimony to the effect that Mr. Maraist was cautioned by Mr. McBride just prior to signing that he was assuming personal liability for the full sum of continuing guaranty.
In addition, when Mr. Maraist, as president of Green Garden, executed the note dated May 2, 1977, for $116,724.00 and secured same by his continuing guaranty he had full knowledge that no FHA guaranty had been obtained. He also testified that at the time he signed this note he was aware the Bank would look to him for repayment of the loan if it was not paid by the corporation.
This defendant’s contention that he was not obligated for any funds owed the Bank by Green Garden prior to execution of the guaranty also lacks merit. The instrument expressly proves that it covers all of the latter’s indebtedness, “whether due, or to become due and whether now existing or hereafter arising.”
Having considered the evidence referred to above as well as testimony of Mr. Ma-raist’s considerable business experience, the jury obviously concluded that there was sufficient consideration for the continuing guaranty and that Mr. Maraist was aware of his obligations thereunder.
A jury’s verdict will not be disturbed unless the record reflects that its conclusions of fact are not supported by the evidence or that its application of law is clearly erroneous. Perrin v. St. Paul Fire and Marine Insurance Co., 340 So.2d 421 (La. App. 4 Cir. 1976). We find no manifest error in the jury’s factual findings in regard to the issue of consideration and its determination that Mr. Maraist was bound by his continuing guaranty.
On the second issue, however, we are convinced the jury’s award of $33,000.00 to the Bank is clearly wrong.
In Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274, (La.1975), a continuing guaranty agreement very similar to the instruments involved in the present case was signed by four guarantors. During the pendency of the suit the principal debtor and three of the guarantors were released by the plaintiff bank reserving its rights against the other. It was concluded that the principal debtor and guarantors were liable in solido, that the fourth guarantor was not released by the compromise settlement, but his liability was reduced to one-fifth of the total amount guaranteed. After reviewing codal articles on suretyship and solidary obligations the Supreme Court said:
“The effect of the applications of these articles is that, as between the creditor and the solidary surety, the obligations of the surety are governed by the rules of solidary obligors.”
The fact that the guarantors in the present case executed three separate documents which were identical, instead of one, does not in our opinion change the result. All of them were obliged to do the same thing, that is pay the whole indebtedness of *1298 Green Garden up to the limit of the guaranty. Under the express provisions of LSA-C.C. Art. 2091 such an obligation of the parties is in solido. Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La. App. 2 Cir. 1974). This is true even if the instrument which each signed contained no such words as in solido. George Moroy Cigar & Tobacco Co. v. Henriques, 184 So. 403 (La.App.Orl.1938).
Thus, when the present suit was filed the three guarantors were solidarily liable with Green Garden to the Bank up to the sum of $86,350.00. Upon Mr. Leeper’s discharge in bankruptcy their virile shares of the obligation were increased from one-fourth to one-third each. Upon the release by the Bank of Mr. Blackburn, Green Garden and Mr. Maraist were deprived of their rights to legal subrogation against him and accordingly the Bank thereafter could claim only two-thirds of the debt from the two solidary obligors who had not been released. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3 Cir. 1964). At the time of the settlement with Blackburn, Green Garden’s indebtedness to the Bank exceeded the amount of the continuing guaranty. Therefore, the solidary liability of Maraist and Green Garden to the plaintiff in the present case is two-thirds of the principal amount of the continuing guaranty (% X $86,350.00) or $57,566.66, plus two-thirds of the sum awarded for attorney’s fees (% X $18,765.66) or $12,510.44. The judgment against Mr. Maraist will be amended in these respects.
For the reasons assigned, the judgment of the District Court is amended to increase the amount of the award to the plaintiff against Pierre Jules Maraist to the sum of $57,566.66, plus $12,510.44 as attorney’s fees, his liability for such sums being in solido with Green Garden Processing Company, Inc. As amended, it is affirmed. The costs of appeal are assessed to appellee, Pierre Jules Maraist.
AMENDED AND AFFIRMED.

. A default judgment was rendered before the trial commenced against Green Garden Processing Company, Inc. in the amount of $75,-062.66, plus interest and an attorney’s fee of $18,765.66 and judicial recognition of the mortgage and continuing guaranties.