369 So.2d 1075 (1979)
Ronald James DUPREE, Sr.
v.
PECHINAY SAINT GOBAIN CO. et al.
No. 12429.
Court of Appeal of Louisiana, First Circuit.
February 12, 1979.
Rehearing Denied April 16, 1979.
Writ Refused June 11, 1979.
*1077 Boris Navratil, of Breazeale, Sachse & Wilson, Baton Rouge, for appellant-defendant-Dow Chemical Co., Dow Engineering and Constr. Co. and Associated Indem. Co.
James H. Dupont, of Dupont, Dupont & Dupont, Plaquemine, for appellee-plaintiff, Ronald James Dupree, Sr.
Lloyd C. Melancon, of McLoughlin, Barranger, Provosty & Melancon, New Orleans, for appellee-defendant-Creusot-Loire, Ltd. and Compagnie des Ateliers et Forges de la Loire (C.A.F.L.).
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge.
Dow Chemical Company and Dow Engineering & Construction Services, and their insurer, Associated Indemnity Company, appeal from judgment against them, pursuant to jury trial, awarding plaintiff, Ronald James Dupree, Sr., damages for serious burns sustained when one of the pressure vessels or reactors, in which polyvinyl chloride (PVC), a plastic resin, was produced at Goodyear Rubber & Tire Company's chemical plant near Plaquemine, Iberville Parish, Louisiana, came open while the vessel was in chemical reaction, spilling highly flammable gases which caused a flash fire and explosion.
This litigation arises from the flash fire accident which occurred on January 7, 1972, and which injured several Goodyear employees, including Dupree. Three of the employees, Ronald James Dupree, Sr., Sterling Hebert and Michael Bourgoyne filed suits to recover damages for the injuries they sustained in this industrial accident. Their suits, as well as the suit filed by Travelers Insurance Company, Goodyear's workmen's compensation carrier, to recover for compensation paid to the Goodyear employees injured in the accident, were consolidated for trial.
The Goodyear plant where the accident occurred was at the time using a manufacturing process, known as the "Pechinay" process, to make polyvinyl chloride or "PVC". The worldwide patent rights to the "Pechinay" process were held by a French chemical company known originally as Pechinay Saint Gobain Co., later as Rhone-Progil, and presently as Rhone-Poulenc, sometimes referred to hereinafter as "PSG". It was under license from PSG that Goodyear was using the "Pechinay" process.
The Goodyear chemical plant was designed and constructed in two stages by an engineering subsidiary company of Dow Chemical Company, known as Dow Engineering & Construction Services, both companies sometimes hereinafter referred to as the "Dow group". The first stage, consisting of one production unit of pressure vessels, known as "Train 1", was constructed for Dow Chemical Company. Dow Chemical Company planned to manufacture polyvinyl chloride; however, upon completion of the plant, Dow Chemical Company sold it, along with license rights to the "Pechinay" process, to Goodyear.
Subsequently, Goodyear decided to enlarge the chemical plant by adding a second train of pressure vessels, known as "Train 2". For this second stage, Goodyear contracted with Dow Engineering for the engineering design work. The pressure vessels for the second train, as were those for the first train, were manufactured by a French manufacturer of industrial machinery, known as Compagnie des Ateliers et Forges de la Loire, which later became Creusot-Loire, sometimes referred to hereinafter as C.A.F.L. The Train 2 pressure vessels were purchased by Goodyear from C.A.F.L. It was one of the pressure vessels in Train 2 which was involved in the accident which caused the injuries sued upon herein by the plaintiffs.
*1078 The plaintiffs initially sued a number of defendants, but in due course limited their suits to PSG, C.A.F.L., the Dow group, several executive officers of Goodyear, and certain insurance companies.
Before the suits came to trial, all plaintiffs settled their claims against PSG, C.A. F.L. and the Goodyear executive officers for $1,200,000.00 to Hebert, $400,000.00 to Bourgoyne and $100,000.00 to Dupree, with the plaintiffs reserving their rights against the Dow group. However, due to third-party demands and counter claims, none of these parties were dismissed from the litigation.
In this posture, the suit proceeded to trial on August 29, 1977. During the course of the trial, the Dow group dismissed their indemnity actions against PSG and the Goodyear executive officers, who, in turn, dismissed their counter claims against the Dow group. Later, during the trial, the Dow group settled the claims of plaintiffs Bourgoyne and Hebert.
At this point, the actions remaining before the court were the Dupree damage suit against the Dow group and Associated Indemnity Company, their insurer; the thirdparty action of the Dow group against C.A. F.L.; and C.A.F.L.'s counter claim against the Dow group. Subsequently, the Dow group's motion for a directed verdict against C.A.F.L. was granted, dismissing the latter's counter claim. However, the Dow group's motion for a directed verdict against plaintiff Dupree was denied.
After a lengthy trial, the case was submitted to the jury on special interrogatories. The jury answered the interrogatories to the effect that the combined negligence of the Dow group and C.A.F.L. was the proximate cause of the injuries to Dupree, and awarded plaintiff Dupree the sum of $33,000.00 as damages against the named defendants in solido.[1]
From this judgment, Dow Chemical and Dow Engineering perfected a suspensive appeal. Plaintiff Dupree answered the appeal, seeking an increase in the damage award. C.A.F.L. also answered the appeal, claiming recovery from Dow Chemical and Dow Engineering and their insurer for full indemnity, or a pro rata contribution for the earlier settlements with the plaintiffs.
Although the appellants are the sole remaining defendants, liability of other defendants is before us because the appellants, in addition to urging the Dow group's freedom from negligence, contend that the Dow group should be awarded full indemnity against C.A.F.L., and that the Dow group and C.A.F.L. should not have been held to be solidary obligors. The appellants also urge that the trial judge erred in failing to sustain the objections to the trial tactics of counsel for C.A.F.L.; in ruling that the Dow group would have to introduce the entire deposition of Lucien Vigliecca, a French engineer, rather than those portions Dow's counsel selected; and in ruling certain documentary evidence inadmissible. The appellants particularly contend that the trial judge erred in failing to sustain their motion for a directed verdict at the close of plaintiff's case.
Before examining the evidence in this case, we note that under the rule of Canter v. Koehring Company, 283 So.2d 716 (La.1973), a reviewing court must give great weight to factual conclusions of the trier of fact.
A jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence, and/or its application of the law is clearly erroneous. Moreaux v. Argonaut Insurance Company, 350 So.2d 240 (La.App. 3 Cir. 1977), writ denied, 351 So.2d 776 (La.1977); Perrin v. St. Paul Fire and Marine Insurance Company, 340 So.2d 421 (La. App. 4 Cir. 1976). In the absence of manifest error, the appellate court is not to disturb, on appeal, the finding of the jury *1079 which has evidence before it furnishing a reasonable factual basis for its verdict, based on its reasonable evaluation of credibility. Canter v. Koehring Company, supra; Blancher v. Samuels, 354 So.2d 213 (La.App. 4 Cir. 1977), writs denied, 355 So.2d 257, 263 (La.1978).
Looking to the record in this case, there is ample testimony by the Dow employees and Goodyear employees that Dow Engineering and Construction Services engineered and designed the degas lines, the piping and the flanges for both "Train 1" and "Train 2" (which were substantially identical in all pertinent areas) and which the jury evidently decided were faulty, causing the accident and injuries to Dupree.
Alton Deville, the Maintenance Supervisor for Goodyear who investigated this accident immediately after it occurred, testified that the degas line ruptured due to metal fatigue, and improper fitting of the line with the pressure vessel, causing the flash fire. This testimony was corroborated by Douglas Connor, the Manager of Engineering and Maintenance for Goodyear, who testified that the degas line was broken and the filter head was turned upside down in the manway opening, indicating that the filter head had been forceably pushed away from the reactor. Deville's testimony was also supported by Amos Dixon, Production Superintendent for Goodyear. Tommy E. Stockman, Shift Supervisor for Goodyear on "Train 2" at the time of the accident, said that the degas line which was connected to the head of the pressure vessel kept it from turning and that it was the failure of the degas line due to metal fatigue which caused or contributed to the accident:
"Q. This degas line which you referred to as the 212 flange, about how big is the degas line?
A. I think it was either 4 or 6 inches, at this point that is really a guess.
Q. Four to six inches in diameter?
A. Yes, sir.
Q. And it attached to the top of the filterhead?
A. That's correct.
Q. You indicated that sometimes the degas line at the top of the filterhead didn't line up just right?
A. That's correct."
* * * * * *
"Q. Are you not personally, based on your experience with these reactors, convinced that the degas elbow on autoclave 2B failed because of fatigue?
A. That's my belief, yes, sir.
Q. And that this caused or contributed to the accident?
A. Yes, sir."
There was also testimony that Dow Engineering was negligent in that it had a duty and obligation to check the pressure vessels purchased from C.A.F.L., and that it breached this duty by failing to make a proper check of the vessels to see if the vessels met pressure vessel requirements of the American Society of Mechanical Engineers (A.S.M.E.). There was evidence by the expert witness, Dr. Gerald D. Whitehouse, showing that the pressure vessels did not meet the A.S.M.E. standards.
In addition, there was evidence that the pressure vessel involved did not have a proper locking mechanism, or a valve-type device to relieve pressure in case of emergency; and there was no way to examine visually the alignment pins to see that they were in place and in good condition to assure that the vessel was secured before the building up of pressure in the vessel.
From the verdict and the answers to the special interrogatories, it appears that the trial jury accepted plaintiff Dupree's allegations that there were acts of negligence on the part of the Dow group which caused, or contributed to the cause of, the injuries to the plaintiff herein. We have reviewed the record and do not find manifest error in the verdict and judgment based thereon. Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976). On the contrary, there is persuasive evidence in the record establishing the liability of the Dow group.
Moreover, in view of the significant credible evidence discussed above, we find that *1080 the trial court properly denied the appellants' motion for a directed verdict in their favor against plaintiff Dupree. There was substantial evidence, if believed by the jury, from which reasonable inferences could be drawn by the jury in reaching a verdict against Dow Chemical and Dow Engineering. Hence, the trial judge properly denied the motion by appellants for a directed verdict under LSA-C.C.P. art. 1810.
Furthermore, we find no merit to the appellants' contention that they were deprived of a fair trial due to the improper conduct of counsel for C.A.F.L. The record does not reflect any improper conduct by counsel for any of the parties. Counsel merely vigorously and enthusiastically advocated the rights of their respective parties during a complex, multiparty lawsuit tried over a period of five or six weeks to a jury. The trial judge listened to all sides of every issue as questions arose, and ruled firmly and fairly when called upon to do so.
The trial judge admonished counsel when arguments tended to become heated, and in a manner which could in no way adversely reflect upon any counsel's behavior to the jury. The rights of appellants were not prejudiced by any tactics or activities of counsel representing any of the parties.
Counsel for appellants does not set out any particular documentary evidence that he was unable to present to the jury which in any manner prejudiced the rights of his clients, so we will assume this is not a serious issue before this Court despite his general reference to the trial court's error in sustaining objections to some documents offered on behalf of the appellants.
When an appellate court has all the facts before it, it is its duty to render judgment on the merits where a trial judge has made a consequential but erroneous ruling on exclusion of admission of evidence or where a trial judge has made an erroneous instruction to the jury. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
Thus, as to the specification of error concerning the trial judge's sustaining the objections to some documentary evidence, we are of the opinion that in light of our Supreme Court's decision of Gonzales v. Xerox Corporation, supra, there is no need for us to determine whether or not the trial judge erred in his ruling on the objections. For, even if we were to find the trial judge in error, rather than remanding for a new trial, we are compelled to render judgment on the merits. The evidence in the record supports a finding that the injuries sustained by plaintiff Dupree were caused by the combined negligence of the Dow group and C.A.F.L.
The appellants also contend that the trial judge erred in refusing to permit them to offer a selected portion of the deposition of a French engineer, Lucien Vigliecca, in evidence. LSA-C.C.P. art. 1450(4) provides:
"If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which, in fairness, should be considered with the part introduced, and any party may introduce any other parts."
Although we feel that the judge did err in his order that the entire deposition be read, without regard to whether fairness and equity required it, we find that it did not constitute reversible error because the desired evidence was obtained from other sources.
In Broussard v. State Farm Mutual Automobile Insurance Company, 188 So.2d 111, 120 (La.App. 3 Cir. 1966), writ refused, 249 La. 713, 190 So.2d 233 (1966), the Court stated:
"As suggested by the plaintiff, the defendant's introduction of isolated excerpts from the plaintiff's discovery deposition could and did present a distorted meaning of the plaintiff's discovery reply in the context of preceding questions and the surrounding testimony. For this reason, we think, prejudicial error was committed in admitting isolated excerpts of the discovery deposition without requiring the defendant simultaneously to introduce relevant immediately preceding or succeeding portions which showed the *1081 meaning in context of the excerpts introduced, as well as in refusing to permit the plaintiff subsequently, on redirect to introduce the whole discovery deposition. . . ."
The record does not show that counsel for appellants pursued this matter in the trial court; but, rather, other depositions were read to the jury. Counsel for appellants admits in his brief that he did not pursue this matter further, but elected to proceed without this item of evidence "to keep from prejudicing his side of the case further, by boring the jury with the reading of a 400page deposition, much of it irrelevant."
As an alternative, the Dow group avers that they are entitled to recover from C.A. F.L. indemnity toward any judgment recovered herein by Dupree on the grounds that C.A.F.L. was negligent in:
a. Designing, constructing and manufacturing the production equipment used in the manufacturing process, more specifically the post-polymerizers and their manway closures;
b. Failing to properly test, inspect and examine the production equipment, including the post-polymerizers and their closures, to ascertain that it was free from defects;
c. Failing to warn users of the vessels of the importance of maintaining the integrity of all parts of the manway closures, specifically certain positioning pins;
d. Failing to equip the vessels with adequate safety and warning devices in the event the integrity of the closures became impaired while the vessels were in reaction;
e. Failing to inform the Dow group and Goodyear of their own operating experience, which should have demonstrated to C.A.F.L. that the closures were defectively designed.
The Dow group thus contends that their liability is only derivative and secondary to that of C.A.F.L., the manufacturers of the pressure vessels, whose liability in this regard should be deemed active and primary.
The simple answer to this contention is that the jury found active and primary negligence on the part of Dow Chemical and Dow Engineering and found that the Dow group's negligence, combined with the negligence of C.A.F.L., was the proximate cause of the accident and the resulting injuries. The jury found the Dow group and C.A.F.L. solidary obligors. Under LSA-C.C. art. 2103 the jury could cast each solidary debtor for its "virile portion of the obligation," and that is exactly what the verdict indicates was done. The Dow group was given credit for C.A.F.L.'s virile portion since C.A.F.L. had already settled with plaintiff.
Furthermore, the Dow group has no right to recover by way of indemnity. It is only where there is a party not actually at fault, whose liability is vicarious and derivative because it results from the faults of others, that the party may be indemnified by such others. See Bewley Furniture Company, Inc. v. Maryland Casualty Company, 285 So.2d 216 (La.1973).
The general rule which is applicable to this situation is set out and discussed in Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922), where the Court stated:
"It is undoubtedly the general rule of law and jurisprudence that where two or more parties, acting in concert, or are legally held to have acted in concert, commit a wrongful act from which damages result to a third party, the party who is compelled to respond and to pay for the injury can have no action for indemnity against the other party or parties to the wrongful act. The rule has its foundation in public policy, that no one can allege his own turpitude or claim an advantage for his own wrong. The courts in such a case will leave the parties in the position in which they have placed themselves, and will not undertake to adjust equities between them, nor to inquire into the comparative or relative culpability as between them. Every rule, however, has its exception, and where, as in this case, *1082 the actual fault of the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty, the general rule will not apply, and indemnity may be had against the one primarily responsible for the act which caused the damage. . . . The plaintiff, not being in possession of the property, and having no knowledge of the defective condition of the door and no opportunity to prevent the accident which befell Lincoln, could not in law or morals be said to be a culpable participant in the act of negligence."
In this suit C.A.F.L., at the time of the filing of responsive pleadings, asserted an alternative third-party petition seeking contribution and indemnity against Dow Chemical and Dow Engineering and their insurer, Associated. Thereafter, with full disclosure to all parties, C.A.F.L. made a restricted settlement with the plaintiffs which included a reservation of rights. The jury specifically found the Dow group and C.A.F.L. to be joint tortfeasors. Their combined negligence was active and primary in causing the accident. There is ample evidence in the record to support the jury's conclusion that C.A.F.L.'s negligence was not merely vicarious and secondary. For the reasons more fully discussed above in denying the Dow group's claim for contribution or indemnity, we deny C.A.F.L.'s claim for such relief.
We have previously indicated the amount of the award made to plaintiff Dupree. Plaintiff-appellee, in his answer to the appeal of the Dow Group, seeks an increase in the award.
In Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971), the Supreme Court stated the well-settled principle that in assessing damages much discretion is left to the trial judge or jury, LSA-C.C. art. 1934(3):
"From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
The Supreme Court has also set forth the rule of appellate review as it applies to awards of general damages in the case of Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974), as follows:
"The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages."
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), the Supreme Court made the definitive statement in regard to appellate review of awards for general damages as follows:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., supra; Bitoun v. Landry, [302 So.2d 278 (La.1974)] supra.; Fox v. State Farm Mutual Automobile Ins. Co., [288 So.2d 42 (La.1973)] supra.; Walker v. Champion, [288 So.2d 44 (La. 1973)] supra. Only after making the finding that the record supports that the lower court abused its much discretion *1083 can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., [294 So.2d 803 (La.1974)] supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.
"Further we believe that, heretofore, courts of appeal have placed too much emphasis on their review of other reported decisions. Certainly no two cases are ever fully alike. And whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Of course, another factor bearing on this matter is that significant change has been, and is taking place in our society not the least of which are changes in economic conditions (particularly rampant inflation), fluctuating job categories, employment opportunities, and even lifestyles. Furthermore, it is impossible for an appellate court to judge what evidence in a particular case was given special weight by the finder of fact."
See also Note, 49 Tul.L.Rev. 460 (1975).
With regard to quantum, the medical evidence presented at trial revealed that Dupree suffered painful injuries as a result of the accident. Dr. Charles H. Baughman, the attending surgeon, testified that plaintiff Dupree was burned over about 30-35% of the body area, primarily over the head, arms and back. Dr. Baughman was of the opinion that Dupree had sustained a major burn injury, his burns appearing to be largely second degree. Dupree remained in the hospital for approximately 36 days, during which time he received the acceptable burn treatment, including skin grafts and physical therapy. Dr. Baughman assigned a 15% permanent disability, taking into consideration sensitivity to sunlight and heat, and emotional problems connected with this type of injury. Dr. Baughman stated that within these limitations, Dupree should be able to lead a full and useful life. The record shows that Dupree went back to work on light duty about two months after the accident and has worked continuously since his release to full duty without any untoward experiences.
We have considered the award made in the instant case in light of the well-established rule and find no abuse of the much discretion vested in the jury. The award is within the bounds of the jury's discretion.[2]
Accordingly, for the foregoing reasons, we affirm the judgment appealed at appellants' costs.
AFFIRMED.
NOTES
[1] The judgment mentions C.A.F.L. only as to costs because Dupree had previously settled with that defendant. The judge apportioned the jury award of $33,000.00 among the three, so that we have a total judgment of $22,000.00 (omitting C.A.F.L.), i. e., $11,000.00 against Dow Chemical and $11,000.00 against Dow Engineering.
[2] The jury was aware that Dupree had already received $100,000.00 in his settlement with certain other defendants and C.A.F.L.