LEAR, Judge.
Plaintiff-appellant appeals from an adverse jury verdict in a medical malpractice suit. The facts show that Lynn Dupuy began developing acne at about twelve years of age and that the condition worsened until, by the time he became an adult, most of his body was affected. He first saw Dr. Tilley and his partner, Dr. Thomas Graves, both dermatologists, in late 1970. He was treated primarily by Dr. Graves until July, 1975, at which time he began seeing Dr. Tilley, who treated him until December, 1976. Dr. Tilley and Dr. Graves had severed their partnership back in 1974. The record discloses that Dupuy was given numerous medications. However, the most effective drug seemed to be cortisone, an anti-inflammatory agent.
Expert medical testimony indicates that cortisone can have serious side effects on glands and cause osteoporosis, or demineral-ization of the bone. The hypothalamus, pituitary and adrenal glands are suppressed by cortisone, necessitating slow withdrawal of the drug. Both Dr. Graves and Dr. Tilley testified that they discussed the side effects of cortisone with plaintiff and advised him of the signs to watch for and to report to the physician should any signs appear.
Plaintiff, while under treatment by Dr. Tilley, developed Cushing’s Syndrome, which is an indication of excessive cortisone in the body. He was hospitalized and diagnosed as having Iatrogenic (physician-induced) Cushing’s Syndrome. There was also a notation on the hospital record indicating cortisone being self-induced, which information was part of the history given by plaintiff. Neither defendant nor Dr. Graves had any specific knowledge as to whether plaintiff refilled any prescriptions for cortisone tablets. Additionally, there was testimony by the plaintiff that when he had a flareup of acne, he would take extra pills.
During the course of cross examination, appellant’s attorney referred Dr. Tilley to a reference book, Dermatology, by Maschella, Pillsbury and Hurley. That portion of the text relevant to this matter reads as follows:
“A. Treatment is difficult and often ineffective. Intense antibiotic therapy is necessary, with frequent bacteriologie-an-tibiotic sensitivity studies to guide the selection and use of antibiotics as the disease progresses. Systemic corticosteroids are effective in controlling the process, but long-term therapy is necessary and their discontinuance often leads to a flare-up of the disease. Because the daily long-term use of systemic steroids will bring the risk of side effects, these drugs should be reserved for the most severe cases and be administered every other day when possible; the therapeutic risks must be weighed against the gains.
“The course of acne conglobata is chronic, and the prognosis is poor. Severe and disfiguring scars as well as the chronicity of the process often cripple patients with this condition both physically and mentally.”
La.R.S. 9:2794 reads as follows:
“A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261, et seq., or a dentist licensed under R.S. 37:751, et seq., the plaintiff shall have the burden of proving:
*636 “(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists practicing in the same community or locality to that in which the defendant practices; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty-
“(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
“(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
⅝ ¾5 ‡ ⅜ ‡ ⅜
“C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician or dentist. The jury shall be further instructed that injury alone does not raise a presumption of the physician’s or dentist’s negligence. The provisions of this Section shall not apply to situations where the doctrine res ipsa lo-quitur is found by the court to be applicable.”
The issue as presented by plaintiff concerned the question of whether or not Dr. Tilley should have treated Dupuy with cortisone. The experts differed as to whether or not cortisone should be used and with the question of how much should be used and the frequency with which it should be administered. None of the experts would voice an opinion as to whether or not Dr. Tilley’s treatment of Dupuy amounted to malpractice. It should be noted that this matter was tried for several days in the district court before being presented to the jury and that the jury returned a unanimous verdict in favor of defendant, rejecting plaintiff’s demands.
In discussing the issues of this case, we must keep in mind the pronouncements of this court in Dupree v. Pechinay Saint Gobain Company, et al., 369 So.2d 1075, February 12, 1979, wherein this court held that before examining the evidence, under the rule of Canter v. Koehring Company, 283 So.2d 716 (La.1973), a reviewing court must give great weight to factual conclusions of the trier of fact. A jury verdict should be maintained, unless the record reflects that its conclusions of fact are not supported by the evidence and/or its application of the law is clearly erroneous. Moreaux v. Argonaut Insurance Company, 350 So.2d 240 (La.App. 3d Cir. 1977), writ refused November 11, 1977. In the absence of manifest error, the appellate court is not to disturb, on appeal, the finding of the jury which has evidence before it furnishing a reasonable, factual basis for its verdict, based on its reasonable evaluation of credibility.
Looking at the record in this case, there is ample testimony to support the use of cortisone in the treatment of plaintiff’s condition. Inasmuch as this case was tried before a jury, we are not knowledgeable as to the reasoning of the jurors in arriving at their verdict. There was testimony and evidence that the plaintiff, by taking pills against the orders of his doctor, may have caused his own condition. There was testimony by one of the witnesses that cortisone makes a patient “feel good”.
Based upon the evidence, the jury may have determined that Dr. Tilley was guilty of no negligence in the manner in which he treated the plaintiff or they may have found that plaintiff’s own negligence had caused his new problem of Cushing’s Syndrome when he took additional cortisone against the advice and without the knowledge of his doctor. A careful reading of the record clearly shows that there was evidence in the record supporting the jury verdict.
*637 Therefore, under the cases cited above, we must give great weight to the verdict of the jury and we should maintain said verdict where the record reflects that the evidence supports such verdict and that the jury’s application of law in this case is not erroneous.
Therefore, the holding of the jury in the trial court will be affirmed, appellant to pay all costs.
AFFIRMED.