WATKINS, Judge.
This is an action brought by Curtis J. Landry d/b/a Curtis’ Seafood Restaurant to recover damages from Pierre Part Natural Gas Company for loss of use of leased premises and mental anxiety and inconvenience attendant thereto resulting from Pierre Part’s failure to repair a leak in a natural gas line in the immediate vicinity of the leased premises. Pierre Part pleaded prescription and third-partied South Central Bell, which had damaged the outer layer of the pipe in which the leak was ultimately found. South Central Bell pleaded prescription to the third party demand. The trial court originally held prescription had run on the principal demand. We reversed, stating the tort alleged to have been committed by Pierre Part was continuous in nature and hence not subject to the running of prescription so long as the leak was not corrected. (See 344 So.2d 412 (La.App. 1st Cir. 1977)) Upon remand, the trial court, after trial on the merits, rendered judgment for plaintiffs in the sum of $30,000 on the principal demand, and dismissed Pierre Part’s third party demand against South Central Bell, finding Pierre Part’s claim had prescribed. The trial court granted a new trial limited to reargument and reduced the amount of the judgment in favor of Landry to $10,000, and denied the third party claim of Pierre Part against South Central Bell. Pierre Part appealed and Landry answered the appeal seeking an increase to the original sum of $30,000 damages. We affirm the judgment of the trial court.
On September 1, 1970, Landry leased a building known as the “Live Oak Inn” located on Belle River from Mrs. Myrtle L. Cazes for $75.00 per month, the lease to have a primary term five years. The premises were operated as a bar and dance-hall. Landry decided to convert the building into a restaurant and bar, to be known as “Curtis’ Seafood Restaurant”, and to justify the expenditure of money on the premises obtained a new lease commencing April 1, 1973 at $75.00 per month rental for a primary term of ten years. Landry noticed the smell of escaping gas in and around the building about that time but proceeded with the renovation work, which involved adding a large kitchen, adding a wood floor on beams above the original concrete floor, adding partitions, and adding a drop ceiling. The restaurant was opened shortly and drew a large clientele, as Landry was known in the area as a good cook. However, the gas smell persisted, both inside the building and near the front door. Many patrons complained about the smell, and business became very poor as time went by. Finally, in the summer of 1974 Landry closed his restaurant, and later, his bar. Landry continued to live in the restaurant building.
In the summer of 1973, Landry made repeated calls to Pierre Part, which serviced the premises with natural gas and which had a gas pipeline that ran parallel to the restaurant, complaining of the gas odor. Pierre Part sent an employee, Lee Gaudet, to the restaurant and he also smelled gas but was unable to find a leak after applying a soap and water solution to test for leaks, both on the customer’s and on the company’s side of the meter. Landry replaced all his gas pipes but this did not end the gas smell.
Finally, after repeated complaints were made, Pierre Part sent Mr. Tullier of Quality Rentals, an independent contractor, and a crew from that company, to search for the leak by excavating into the ground near the building. Tullier dug a trench around the gas pipeline the entire length of the building and, after applying the soap and water solution, did not find the leak. The crew *623 told Landry they would return the next day, but the crew failed to come back.
Landry contacted a police juror requesting help. Nothing was done to remedy the leak. He then contacted Mr. Dupont, the Public Service Commissioner, but still had no success. The leak persisted.
Finally, Landry employed a lawyer, Mr. Menuet, who wrote Pierre Part. Pierre Part sent Mr. Tullier back to the premises in response to the letter, and he surveyed the situation. The next day, April 28, 1974, Tullier and a man who possessed an instrument used to detect gas leaks returned to the premises. The instrument indicated there was a leak six feet beyond the point where the digging had stopped more than seven months earlier. The earth was dug up and the leak was found. The leak was repaired by placing a collar on the pipe. No gas odor has been detected since the leak was repaired.
It was noticed that near the leak in the gas pipeline was a telephone cable, and that the outer covering of the gas line had been scraped off by the machine used to lay the telephone cable. The telephone cable was shown to have been laid and owned by South Central Bell.
Appellant argues that it was not proved that the leak that was repaired was the cause of the odor in the restaurant. However, a culvert ran from beneath the wood floor of the restaurant (draining the underlying concrete floor) to Belle River and was very near the pipeline at one point. Mr. Robert, President of Pierre Part Natural Gas, admitted that escaped gas frequently follows on the outside of the pipeline from which it escaped. Thus, it is possible for the leak to have caused an odor in the restaurant building. The fact that the odor of escaping gas ceased when the leak was repaired convinces us that the leak in the Pierre Part gas pipeline which was repaired on April 28, 1974 was responsible for the odor. It is obvious from the foregoing recitation of facts that Pierre Part was guilty of gross negligence in failing to take further action to locate the leak when it was first detected. We, therefore, agree with the determination of the trial court in finding Pierre Part liable.
The trial court awarded Landry $5,000 for loss of use of the leased premises and $5,000 for inconvenience and mental anxiety. There is very little evidence on which to make a precise determination of the monetary sum lost by Landry as a result of the gas leak. However, he leased the premises for $75.00 a month to operate as a restaurant and bar, spent his own money to renovate the leased premises, and lost a large number of patrons solely because of the odor of escaping gas, which was both disagreeable and frightening to potential patrons, as there had been several gas explosions (for which Pierre Part was not responsible) in the vicinity shortly before. Where damages cannot be exactly calculated, the trial court may fix damages at the sum that in its discretion it determines to be appropriate considering the testimony. Fish v. Martin, 201 So.2d 341 (La. App. 3d Cir. 1967); Kogos v. Rittiner, 228 So.2d 62 (La.App. 4th Cir. 1969), writs refused 255 La. 243, 245, 230 So.2d 93 (1970). We find the sum awarded represents an appropriate exercise of the trial court’s discretion, and decline either to reduce damages, as Pierre Part seeks, or to increase the damage award, as Landry seeks.
The trial court found prescription had run on Pierre Part’s third party demand against South Central Bell. The smell was first reported to Pierre Part in the summer of 1973. The damage to the pipeline resulting from South Central Bell’s laying of the telephone cable was not discovered until April 28, 1974. The third party demand was not filed until January 22, 1975. Although prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, if one fails to use due diligence to determine the tortious cause of injury to oneself, he is subject to the one year prescriptive period provided for actions in tort, even though he is ignorant of the fact that a tort had been committed. Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970). As was stated in Cartwright:
*624 “The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence, and the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt.” [footnote omitted] (232 So.2d at p. 287)
Thus, despite the fact that Pierre Part did not know of the tortious act of South Central Bell in abrading its pipeline, it is nevertheless subject to prescription on the third party demand if due diligence would have uncovered the tort. Here, had Pierre Part exercised due diligence in locating the leak, when first notified, the prior tortious act of South Central Bell would have been discovered.
In opposition to the plea of prescription, Pierre Part argues that under LSA-C. C.P. art. 1067 one has 90 days to file an incidental demand after the filing of the principal demand. However, that is the case only if the incidental demand is “not barred” at the time the principal demand was filed. The principal demand was filed November 27, 1974 and the incidental demand became barred in the Summer of 1974. For art. 1067 to apply, the claim must be one that is not prescribed. The claim had prescribed in the Summer of 1974, before the third party demand was filed.
Also, Pierre Part argues that its claim is one of indemnity, which does not prescribe until the party seeking indemnity is cast in judgment. However, in order for a claim to be one of indemnity in the case of tortious acts, the party seeking indemnity must be itself free of fault in tort and liable only vicariously or derivatively. Dupree v. Pechinay Saint Gobain Co., 369 So.2d 1075 (La.App. 1st Cir. 1979), writ denied, 371 So.2d 1341 (La.1979). Here Pierre Part itself was a tortfeasor, as it was negligent in its efforts to detect the gas leak in its pipeline. Hence, the claim is not one for indemnity.
Finally, Pierre Part argues that the tort is a continuing tort, and not subject to prescription. Here, however, there were two separate tortious acts, South Central Bell’s act in damaging the gas line, and Pierre Part’s grossly negligent and inadequate acts in searching for the leak. The tort committed by South Central Bell in damaging the line took place only in an instant, and then it was over. The tortious act of South Central Bell was not continuous.
We, therefore, find the trial court to have been correct in holding that prescription bars the third party complaint brought by Pierre Part against South Central Bell.
We affirm the judgment of the trial court in its entirety, at the cost of Pierre Part Natural Gas Company, Inc.
AFFIRMED.