## No. 10,394.

MRS. MARY CLINE, INDIVIDUALLY AND AS TUTRIX, vs. CRESCENT CITY RAILROAD COMPANY AND CITY OF NEW ORLEANS.

1. When in the petition of plaintiff it is averred that two corporations—one municipal and the other private—are liable *in solido* for damages, the question raised by an exception of mis-joinder is whether, as matter of fact, defendants' solidarity of obligation is *alleged*, and not whether, as matter of law, it exists.

2. The liability of municipal corporations for the acts of their agents is a general rule of law, too well settled to be seriously questioned.

3. In the absence of an express statute imposing the duty and declaring the liability, municipal corporations having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use, in the usual mode, by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty.

4. In case the defective condition of a public street is caused by the fault or neglect of a street-car company in the manner in which its track is laid, or in its failure to keep the streets traversed by its track in good repair and safe for use by the public, such corporation must answer for the consequences.

5. Obligations are in *solido*, on the part of the debtors, when they are all obliged to the same thing, although one of the debtors be obliged differently from the other to the payment of the same thing.

6. Obligations in *solido* are either perfect or imperfect. They are said to be imperfect when obligors bind themselves to the same thing by different acts, or at different times.

7. It is the *implied* and not the *contractual* liability of natural, as well as of artificial per-

sons, which is treated of in the chapter of the code entitled "Offenses and Quasi Offenses" and it is founded on fault, negligence, imprudence and want of skill, and constitutes the act illegal, and the obligation of the participants solidary.

**A**PPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*B. R. Forman* for Plaintiff and Appellant :

1. It is the legal duty of the City of New Orleans to keep its streets in repair; Act 20, 1882, §7 and §36, pp. 20 and 30; and is liable in damage to a person injured by a dangerous place in a public street. O'Neil vs. New Orleans, 30 Ann. 229; Fennimore vs. New Orleans, 20 Ann. 124; Dillon, Vol. 2, §788 and §789.

2. It is the legal duty of a street railway company traversing with its tracks and cars the public streets of a city, to keep its rails, tracks, the space between the rails and contiguous thereto in good order and repair and safe so as not to obstruct or render dangerous the free use of the street, and is liable in damages to a person injured by a breach of that duty. Dominguez vs. Orleans Railroad Company, 35 Ann. 751.

3. When two persons are under the same legal duty to do or refrain from doing the same thing and at the same time and place, are guilty of a breach of that legal duty, they are together guilty of a quasi offense and may be joined in the same suit for the injury done.

*John M. Bonner* for Defendant and Appellees :

1. An obligation arising from the operation of law is different from an obligation arising purely from contract, and two defendants having no privity of interest or contract should not be joined in the same action. 14 Ann. 181; 15 Ann. 502; 24 Ann. 614; 32 Ann. 1165.

2. Where a contract contains no stipulation *pour autrui*, a third person who is neither party nor privy to the contract cannot sue thereon. 14 Ann. 246; 34 Ann. 1123; 48 Conn. 525; 40 Ann. 460; 33 Ann. p. 1 and note; Keokuk vs. Independent District, 53 Iowa; Loeber et al. vs. N. O. and Car. R. R., not reported.

3. Where a petition is general and indefinite, and fails to give certain details of information necessary to enable defendant to make a proper defence, exceptions, whose object is to elicit the information withheld, are well taken and should be sustained.

The opinion of the Court was delivered by

WATKINS, J. This action is for the recovery of damages against the defendants *in solido*, for having negligently caused the death of John Cline, husband of the plaintiff Mary Cline, and father of her daughter Kate. In the petition it is charged that "on or about January 21, 1889, John Cline  *   *  was driving upon Calliope street, between St. Charles avenue and Prytania street, and while in the exercise of due care and caution, and without negligence on his part, ignorant of the dangerous condition of the street, his vehicle got into a hole in the street by the side of the railroad track, and ran against a loose rail of said Railroad Company, and suddenly and unexpectedly was stopped thereby, and  *  .  *  was violently thrown upon the loose rail and

spike of said Railroad Company, and had his skull broken. He suffered great pain and agony of mind and body, and then died."

The City answered, but the Railroad Company filed several exceptions, the first of which was sustained by the Judge of the Court below, and the suit dismissed *quoad* said company, and from that judgment the plaintiff appeals.

I.

The exception which was sustained is as follows, viz:

"The plaintiff has no right to join the City of New Orleans and this defendant, in the same action, and sue them in *solido* in the same suit."

This exception puts on trial the *adequacy of the averments* of plaintiff's petition, and hence we quote them:

"The petition of Mrs. Mary Cline in her own right, and as tutrix of her minor daughter Kate Cline, respectfully shows that petitioner resides in this city, and that the Crescent City Railroad Company, a corporation of which William J. Behan is President, and which is domiciled in New Orleans, and the City of New Orleans are indebted *in solido* to your petitioner in the sum of $30,000 damages for this, to-wit:

"It is the legal duty of the City of New Orleans to keep its streets in good order and repair and safe for use by the inhabitants. Calliope street is a public street, paved many years ago between St. Charles avenue and Prytania street with square blocks of granite at the expense of the abutting proprietors.

"The said Railroad Company by virtue of the city ordinances and contracts by which it acquired the franchise to lay its tracks and run its cars through the public streets, including Calliope street, between St. Charles avenue and Prytania street, is bound to keep the streets through which its tracks are laid and its cars run in good order and repair and safe for the use of the people and is so bound as a part of its duty to the public independently of its contract. The said City and said Railroad Company were both guilty of a gross breach of their duty as above set forth from the 1st to the 21st of January, 1889, during which time Calliope street, between St. Charles avenue and Prytania street, was in a very bad and dangerous condition, which fact was well known to the officers and agents of the said two corporations, whose duty it was to keep the said street at that place in repair and safe for the use of the inhabitants. There was a deep hole by the side of the track of the said Railroad Company, a loose rail and a spike which were to the knowledge of the officers of the said two corporations dangerous, and which had previously to the 20th January, 1889, caused injury to various persons lawfully traversing said street at said place.

Said bad and dangerous condition of said street was due to gross care-
lessness and negligence of the said two corporations."

The question, therefore, is whether, as matter of fact, defendant's soli-
darity of obligation is, in legal affect, *alleged*, and not whether, as mat-
ter of law, it *exists*. To decide the latter, would be, in great measure,
to decide the law questions in the case, before the merits are reached;
while, in adhering to the former, we assume that the allegations of plain-
tiffs' petition are proved, and judge of the *prima facies* of the case.

The view taken of it by defendant's counsel is—quoting from his brief
at page 3—that "if these defendants be bound to repair, and keep in re-
pair the public streets, *the obligation to do so arises from two entirely dif-
ferent sources*. In the case of the City of New Orleans, the obligation
arises from the act of the Legislature, and *is* an obligation imposed *en-
tirely by law*. But, on the part of the Crescent City Railroad Company,
the *obligation grows out of its contract with the city, and is purely con-
tractual in its nature*. There is, therefore, *no solidarity* of obligation."
(Italics, except the last, are ours.)

Now, if his proposition be conceded, it only serves to demonstrate
what the *sources* of the defendant's obligations *are*, and not what they
are *alleged* to be. But the plaintiffs' petition not only avers it to be "the
legal duty of the City of New Orleans to keep its streets in good order
and repair, and safe for the use of its inhabitants;" and that "the rail-
road company, by virtue of the city ordinances and contracts, by which
it acquired the franchise to lay its tracks and run its cars through the
public streets, * * * is bound to keep the streets through which its
tracks are laid and its cars run, in good order and repair, and *safe for
the use of the people;*" but the additional averment is made that the rail-
road company "is so bound, as a part of its duty to the public, *inde-
pendently of its contract.*" (Italics ours.)

It is also averred that "the said city and said railroad company were
both guilty of a *gross breach of their duty*, as above set forth, from the
1st to the 21st of January, 1889, etc."

It is also averred that "there was a deep hole by the side of the track
of the railroad company, a loose rail and a spike, which were, to the
*knowledge of the officers of the said two corporations, dangerous,* * * and
that said bad and dangerous condition of said street was due to the *gross
carelessness and negligence of the said two corporations.*"

From all of these averments it appears that plaintiffs' chief reliance,
for the establishment of the solidarity of the defendants' obligations,
does not rest upon the stipulations of the city charter, and that of the
railroad company, so much as upon their *breach of a public duty*, and

their *gross carelessness and negligence*, which are alleged to have been mutual to both, and caused the fatal accident to Cline.

It is made the duty of the city " to open and keep open and free from obstruction all streets, public squares, etc., * * and to keep the streets and crossings * *. clean and in repair, etc. ; " and the Council are required to pass such ordinances as may be necessary and proper for that purpose, and to see to their faithful execution. Secs. 7 and 36 of Act 20 of 1882.

In the contract between the city and the Crescent City Railroad Company, there is a provision to the effect " that the streets through which the road will be built shall be kept in repair, from curb to curb, during the continuance of the term embraced in its charter; at the expense of said company. " Jewell's Dig. (1887), p. 257, Art. 328.

The foregoing provisions embrace, substantially, the contractual relations between the city and the public, and the Crescent City Railroad Company with the city, towards the public—treating the city charter as a contract merely for the purposes of argument. For it is a recognized principle that " municipal corporations, as respects the property which they hold, control and manage for the benefit of their citizens, are governed by the same rules and subject to the same liabilities as individuals are. " Cooley's Const. Lim., p. 276.

Then, let us see whether there is any substantial foundation *in law* for the averments in the petition, that it is the legal *duty* of the two defendants to keep the streets of the city through which this railroad passes "in good order and repair and *safe for the use of the people;* " and that the railroad company " is *so* bound independently of its contract. "

### I.

We will first consider the obligations of the city. In a well reasoned opinion, and upon a careful review of authority, our predecessors maintained the doctrine of *implied municipal liability*, in O'Neill vs. The City of New Orleans, 30 Ann. 220, and said :

" By the twenty-sixth section of its charter, the City of New Orleans is bound to keep in repair its paved and unpaved streets, and—though not an insurer against accidents—it is liable for those injuries which result from its neglect to maintain, in a *safe* condition, the sidewalks and bridges within its limits. "

This doctrine has been constantly maintained in a variety of cases through a long series of years. In Johnson vs. Municipality, 5 Ann. 100, it was substantially stated that the liability of municipal corpora-

tions for the acts of their agents is a general rule of law, too well settled to be seriously questioned.

This case was preceded by similar opinions in McGary vs. City of Lafayette, 12 R. 668; Chose vs. Mayor, 9 La. 343; Ware vs. Barataria Canal Company, 15 La. 168; Mebie vs. Canal Bank, 11 La. 86.

It was also held to be a correct exposition of law in a recent and conspicuous case, State ex rel. Folsom vs. Mayor, 32 Ann. 716, in which the court had under consideration two judgments against the City of New Orleans for damages done to the property of relators by a mob or riotous assemblage. In treating of this subject, we said:

"We are, however, unable to perceive any distinction between the obligations arising under section 2453 of the Revised Statutes and those arising under the articles of the Civil Code relative to offenses and quasi offenses. It merely expressly extends to municipal corporations that responsibility for damage occasioned by their fault or negligence, or by the fault or negligence of their servants or overseers, which rests upon natural persons, under Articles 2315, 2316 and 2320 of the Civil Code. It has been a subject of frequent judicial discussion, and of contrary decisions, whether or not such responsibility would not attach even in the absence of such special statute, on the grounds that powers are granted to municipal corporations especially designed to enable them to preserve peace and order, and that it is their duty to exercise such powers as to afford adequate protection to property against mobs and riots. It cannot be doubted that these principles are the underlying reasons of the statute. But, whatever may be the source of these obligations, it is plain, they do not spring from contract."

Mr. Dillon instances as an "actionable defect" arising from the implied liability of a municipal corporation, "a hole, or excavation in a traveled path, or so immediately contiguous as to make the highway unsafe." 2 Dillon's Munic. Corp. (second edition) sec. 788.

And he expresses the opinion that "it may be fairly deduced from the many cases upon this subject, referred to in the notes, that in the absence of any express statute imposing the duty, and declaring the liability, municipal corporations proper having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries, resulting from neglect to perform this duty. Such a duty and liability are considered to exist without a positive statute, when the following conditions concur:

"1. The place in question, whether bridge, sidewalk, or street, must

be one which it is the duty of the corporation to repair or keep in a safe condition.   *   *

" 2. This duty, or burden must appear upon a fair view of the charter, or statutes, to be imposed, or rest upon the municipal corporation as such.   *   *

" 3. The power to perform the duty of maintaining the streets in a safe condition, by the authority to levy taxes, or impose local assessments for the purpose, must be conferred upon the corporation. " Ibid, sec. 789.

Upon a fair interpretation of plaintiffs' petition these three conditions may be assumed to concur in the instant case ; and, in Davies vs. City of New Orleans, 40 Ann. 806, it was substantially decided that the power existed in the city to raise revenue for *such* purposes.

But, in order to make this proposition perfectly plain and free of ambiguity, the same author further says :

" When the duty to keep streets in repair is, in terms, enjoined upon the corporate authorities, and they are supplied with the means to perform it, there is little difficulty, we think, in holding the corporation liable, on the general principle of law, without an express statute declaring the liability to a civil action by any one specially injured by its neglect to discharge this special duty. " Ibid, same section.

For the present purpose we need not determine—and, at this juncture, could not—whether, as matter of fact, the city is furnished with *adequate* means to keep the streets in repair ; nor whether, as matter of law, the city could relieve herself from pecuniary liability to strangers, on the plea of inadequacy of means for such purpose, owing to the existing constitutional limitation upon the city's exercise of the taxing power. We may content ourselves with saying that a review of adjudicated cases and text writers on this question, while they have been questioned and criticized by some judicial opinions of ability, seem to favor the implied liability of municipal corporations in cases like this.

### II.

The *contractual obligation* of the railroad company is to keep in repair from curb to curb, the streets of the city through which its road is built, during the continuance of its contract, and at its own expense ; its *implied liability*—if such exists—is for the reparation of such damage as may be occasioned through its fault, or neglect, in not keeping *such* streets in repair, and safe for the ordinary purposes and uses of the public, and its own tracks in like safe condition, so that the public may not be imperiled by their use.

In State *ex rel.* New Orleans vs. Railroad Company, 37 Ann. 589, we declined to compel the defendant, by mandamus, to put Jackson street in repair, "from curb to curb," as the obligation of the company "is and could be nothing but a contract obligation," and could not be enforced by such extraordinary means.

In Loeber vs. New Orleans and Carrollton Railroad Company, 40 Ann. —, unreported, we held that the contract of defendant with the city contained no stipulation *pour autrui* that private citizens could enforce. But it has nowhere been held that the *implied* liability of a corporation could not be enforced by strangers and third persons. Nor in the case relied upon by defendants' counsel, Delaney vs. Rochereau & Co., 34 Ann. 1123, was it so held. In that case no corporation was a party; and the court simply decided that "an agent is not responsible for any negligence in the performance of duties devolving upon him purely from his agency, since he cannot, *as agent*, be subject to any obligations towards third persons other than those of his principal. Those duties are not imposed upon him by law."

But, in a more recent case the *implied liability* of a street railroad company was enforced by a decree of this court, upon quite a similar state of facts to the one presented here. The court, in speaking of the causes of plaintiff's injury, said:

"One of the rails had become loose. The spikes were out of place, and the end of the rail was elevated, pointed upwards. The wheel of the wagon struck it plump, the vehicle leaped in air, and he was thrown violently to the ground. The wheel passed over his legs and chest, producing bruises and contusions."

In applying the law to this state of facts, we said: "The defendants' counsel can scarcely be serious in contending that, as the accident was caused by the defective condition of the street, the city *alone* is responsible. The defendant made the defect in the street. The defendant, for its convenience and profit, had iron rails (laid) on the street, and its rails occasioned the injury. It must answer for it." Dominguez vs. The Orleans Railroad Co., 35 Ann. 751.

Further citation of authority on this head need not be given.

## III.

Defendants' counsel argues that "when two persons are guilty of *negligence, each* is responsible for the consequences of *his own* acts; but where two or more persons *wilfully* wrong another, they become co-trespassers and are responsible *in solido* under the very letter of the law; citing R. C. C. 2324. Continuing, he says:

".But, as "an obligation *in solido* is not presumed,' and, as this rule *ceases to prevail only* in cases where an obligation *in solido* takes place of right, by some provision of the law, and as no provision of law has been cited that authorizes the defendants in this case to be sued *in solido*, the exception of mis-joinder should be sustained." R. C. C. 2093, Brief at page 8.

But the Code provides that " there is an obligation *in solido* on the part of the debtors when they are all obliged to the *same thing.*" R. C. C. 2091. It also provides that " the obligation may be *in solido*, although one of the debtors be obliged *differently* from the others to the payment of one and the same thing." R. C. C. 2092.

It has been held that solidarity may be perfect or imperfect, and that it is imperfect when " obligors bind themselves to the same thing by different acts, or at different times." Gay & Co. vs. Blanchard, 32 Ann. 500; 12 R. 183; 2 Ann. 332, 792 ; 15 Ann. 168 ; Marcade, vol. 4, p. 509.

And the rule announced in R. C. C. 2093, is supplemented by another which is contained in R. C. C. 2107, which declares that " there are many contracts in which the obligation is declared by law to be *in solido*, without any express stipulation to that effect; these will be found in the different chapters which treat of such contracts. "

Some of these may be found in the chapter which treats of " offenses and *quasi* offenses," and in which is found article 2324, cited above.

It declares that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." R. C. C. 2315.

That " every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill." R. C. C. 2316. That " we are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of *persons* for whom we are answerable, or of the *things* which we have in our custody." R. C. C. 2317.

That ."masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed." R. C. C. 2320.

All of these obligations have been recognized as being solidary in effect, though not so stipulated.

In Yates vs. Southwestern Brush Electric Light and Power Company, 40 Ann. 467, they were held to be applicable to a private corporation. They were likewise in Knoop, Hanneman & Co. vs. Blaffer, 39 Ann. 23, and in City of New Orleans vs. Southern Bank, 31 Ann. 566.

In all such cases it is the *implied* and not the *contractual* liability, of

natural persons or of artificial beings that is treated of, and it is founded on fault, negligence, imprudence, or want of skill, and constitutes the *act* an offense, or *quasi* offense, and the obligation of participants, solidary.

In all such cases, the right of the plaintiff to join in one suit, all parties to the reprobated act, may be regarded as elementary.

We do not consider the case of New Orleans Insurance Association vs. Harper, 32 Ann. 1165, as applicable. In that suit the sheriff incumbent, and the successor of the sheriff *ex-officio*, were sued *in solido* for damages sustained in the loss of property seized by the latter, and taken possession of by the former when he acceded to the sheriff's office. The court said : " The defendants cannot be liable *in solido*, for they must each have participated equally in the act, or omission that caused the loss. This was impossible, for during the time that Harper was under responsibility growing out of his charge of the property as sheriff, Waggaman did not, and could not share the responsibility, for he was but a private individual, having no connection with the matter," and *visa versa*.

In Holzab vs. Railroad Company, 38 Ann. 186, a question was presented of an improper joinder of the Carrollton street-car company with the Illinois Central railroad company as defendants, and which was excepted to on the ground that the latter was sued for damages for a tort, in the same action wherein the former was sued for damages resulting from a breach of its contract of safe-carriage, and the Court held, on the authority of Arrow Smith's case, 17 La. 419, and Sere vs. Armitage, 9 Mart. 394, that such joinders of action was not objectionable, but indicated that a severance on the trial would be admissible.

Riggs & Bro. vs. Bell, 39 Ann. 1030, was confessedly a "suit based on a *contract*, as to certain defendants, and upon a *tort* as to others," and the Court said : " If they had the right thus to sue the principal and sureties, although liable for different causes and for different amounts, it is impossible to discern why they could not bring in the alleged instigator who may be held liable for the same reason that the principal can be        *        *        *        for the wilful perpetration of a wrong, from which damages have resulted," etc. The right of severance was again recognized.

Williams vs. Pullman Palace Car Co., et al, 40 Ann. 417, was a suit against the Pullman Car Company and the Louisville New Orleans and Texas Railway Company *in solido*, for damages for personal injuries received at the hands of the porter of the former. On motion made in the Court below separate trials were granted, which resulted in a ver-

Wilson vs. Telephone and Telegraph Company.

dict in favor of the plaintiff and against the Palace Car Company, and against the plaintiff and in favor of the Railway Company; but in this Court, each judgment was reversed. Vide pp. 87 and 417.

In Weymouth vs. The City of New Orleans and Aycock, 40 Ann. 344, claim was made against both defendants *in solido* for damages resulting from the death of two little children by falling into a well situated in a market-house, and which was alleged to have been caused by negligence and want of skill on the part of the city and Aycock, their servants and agents. A plea of no cause of action as to the city was sustained, and no appeal was taken therefrom.; and, in this Court, judgment in favor of Aycock was reversed, on the ground that he did not lease the market, but the privilege or franchise of collecting and appropriating the revenues, and that the city held and owned the market house as a *locus publicus*, subject to her own control and police authority.

All of these cases serve to show why the policy of the law should be in favor of permitting the joinder of all parties in one suit who are charged with participation in an offense, or *quasi* offense, whereby damage results, and whose obligations are averred to be *in solido*, reserving their rights to sever on the trial.

We think the lower judge should have so ruled.

It is therefore ordered and decreed that the judgment appealed from be annulled, and the cause re-instated, and remanded for further proceedings according to law and the views herein expressed, the cost of appeal to be taxed against the defendant and appellee, and those of the lower court to await the final determination of the cause.