**Kathy L. JOINER, Administratrix of the Succession of Ronald Shane Joiner, Lawrence Joiner and Ruth Wase Joiner**

v.

**DIAMOND M COMPANY, Halliburton Company and Dr. C. Babson Fresh, Third–Party Defendants.**

Civ. A. No. 771277.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Oct. 22, 1980.

Charles F. Wagner, Pineville, La., for plaintiffs.

Joseph J. Weigand, Jr., Houma, La., LeDoux R. Provosty, Jr., Alexandria, La., Allen L. Smith, Jr., Lake Charles, La., for defendants.

EDWIN F. HUNTER, Jr., Senior District Judge:

Dr. Babson Fresh has filed a motion for a judgment of dismissal and/or summary judgment.

On August 25, 1977 Ronald Joiner was employed by Diamond M Company and was injured on the semi–submerged drilling vessel while cleaning out a mud tank manufactured by Halliburton. While attempting to enter the tank he fell a distance of 30 feet, and was placed under the care of a private physician of his own choice, Dr. Babson Fresh. It was determined that he should be transferred from Alexandria to a hospital in New Orleans. He died aboard a helicopter en route to New Orleans on August 31, 1977.

This action was originally filed on November 15, 1977 by Kathy L. Joiner, wife of deceased, against Diamond M under the Jones Act and general maritime law. Third party complaints were filed by Diamond M against Halliburton and Fresh on October 20, 1978. Halliburton filed a third party complaint against Fresh on August 28, 1979.

The original plaintiff settled with Diamond M and Halliburton for $300,000. The settlement was consummated on August 24, 1979, and plaintiff assigned "any and all rights which she might have." Halliburton and Diamond M now proceed against Fresh for contribution or indemnification for the damages allegedly caused by negligent medical treatment. Fresh insists that there is no basis in fact or law for indemnification and/or contribution.

## CONTRIBUTION

■ The doctor and the third party plaintiffs did not act in concert to produce a single injury. They are not joint tort feasors. Rather, they are successive tort feasors, and Dr. Fresh's alleged negligence, while it may have contributed to the overall damage, was subsequent to the original injury and created in favor of the injured party a separate cause of action against Fresh. The cases considering the issue appear to be in agreement that a tort feasor originally causing an injury and a physician who subsequently aggravates it or causes a new injury in the course of treatment are not in any sense of the term joint tort feasors, and the physician is not liable to the original tort feasor under any theory of contribution. *U. S. Lines, Inc. v. United States*, 470 F.2d 487 at 491 (5th Cir. 1972).

■ Article 2103 of the Louisiana Civil Code, which provides for the right of contribution, has application only when the obligation is solidary. Article 2091 defines a solidary obligation:

> Article 2091. There is an obligation *in solido* on the part of the debtors, when they are all obligated to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them exonerates the others toward the creditor.

The requirements of 2091 are not met under any version of the facts. There were two separate, non–concurrent wrongs–the injury aboard ship at sea and the alleged malpractice by Fresh which occurred six days subsequent to the initial injury.

■ Solidary liability has been imposed where the parties are not actually joint tort feasors, but have acted concurrently in causing an injury.[1] Solidary liability of concurrent tort feasors, however, arises solely where one or more tort feasors can be sued individually for his separate act, and each can be found liable for the entire damage.[2] Where there is a substantive difference in the remedy available from each tort feasor, there is no solidarity, even though the tort feasors may have acted concurrently.[3]

■ Third party plaintiffs' liability under applicable maritime law differs substantial-

1. *Dixie Drive It Yourself System v. American Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962); *Kirtland v. J. Ray McDermott & Co.*, 568 F.2d 1166, Footnote 10 (5th Cir. 1978).

2. Bagwell, "Nature of Joint or Solidary Liability," in *Malone*, Studies in Louisiana Tort Law, Section XIII, page 918, where it is explained:
   At present the majority of courts follow the rule that, *in the absence of concert of action*, defendants are liable *in solido* only in the following situations: (1) where the act of *either* would have caused the entire damage independently of the other,[6] (2) where the act of *neither* would have caused *any* damage in the absence of the other's wrongdoing.[7] An analysis of the cases shows that in holding such defendants liable *in solido* the courts arrive at essentially the same result that they would have accomplished under the old common law rule where the question of solidary liability was not considered. In both of the above situations, if each defendant had been sued individually for his separate act, he would have been liable for the entire damage. Since this is likewise the consequence of solidary liability, the results for practical purposes are the same.

3. *Cripe v. Haynes*, 350 So.2d 956 (La.App., 2nd Cir. 1977); *Phillips v. Houston Fire & Casualty Co.*, 219 F.Supp. 420 (W.D.La.1963).

ly from a doctor's liability under Louisiana law. We address those distinctions:

### DIAMOND M

Diamond M's liability arises exclusively under the Jones Act, 46 U.S.C.A. 688. The statute provides a cause of action for wrongful death and allows the representative of the deceased's estate to assert a survival action on behalf of described beneficiaries, who are members of certain ordered categories of blood relations. The existence of members in one category excludes recovery by the other. Liability is imposed by only the slightest degree of negligence by the employer, and contributory negligence is not available as a defense. The applicable prescriptive period is three years.

### HALLIBURTON

Halliburton's liability arises under the Death on the High Seas Act, 46 U.S.C. § 761 (DOHSA). This statute provides a wrongful death action to be brought by the representative of the deceased's estate on behalf of all dependents of the deceased, without exclusion. Again, recovery is limited to pecuniary damages, alone, but no right to a survival action exists. Comparative negligence applies and the prescriptive period is two years.

### BABSON FRESH, M.D. (a physician in private practice)

His liability, if any, would arise under LSA–C.C. 2315, where a wrongful death action for pecuniary and nonpecuniary damages may be claimed by existing members of described exclusive categories of blood relations. Contributory negligence would completely bar the original plaintiff's suit,[4] and the applicable prescriptive period is one year.

This Court addressed the identical situation under the Federal Employers Liability Act.[5] In *Phillips v. Houston Fire & Casualty Company*, 219 F.Supp. 420 (D.C., 1963), Judge Putnam determined there was no solidary liability and no right to contribution between a third party tort feasor and a railroad employer for injuries to a railroad employee. He again addressed the problem in *Brenham v. Southern Pacific Co.*, 328 F.Supp. 119 (D.C., 1971), citing a long line of consistent jurisprudence contrary to a finding of solidarity in the case of an FELA employer and a third–party tort feasor. He was particularly concerned with the disparate degrees of negligence required to be proved under an FELA case and Civil Code Article LSA–C.C. 2315. These considerations apply in the case at hand. Actions for malpractice are subject to special statutes and negligence is judged by a particular standard of care.[6] Third party plaintiffs, on the other hand, could have been liable for only the "slightest" negligence.

There is no liability *in solido* between Dr. Fresh and the original defendants.

### INDEMNITY

■ The right to indemnification arises exclusively out of an expressed or implied contract or recognized concepts of equity.[7] Treating an injured employee does not create a contractual relationship between the treating physician and the patient's employer.[8]

---

4. Louisiana's Comparative Negligence Statute, LSA–C.C. 2323, did not become effective until August 1, 1980.

5. The Jones Act incorporated by reference the rights and remedies afforded to railway employees under the FELA. In *Engel v. Davenport*, 271 U.S. 33, 38, 46 S.Ct. 410, 412, 70 L.Ed. 813, 817 (1926), it was said of incorporation by reference:

"The adoption of an earlier statute by reference, makes it as much a part of the later act as though it had been incorporated at full length. It brings into the later act 'all that is fairly covered by the reference,' that is to

say, all the provisions of the former act which, from the nature of the subject–matter, are applicable to the later act."

6. LSA–R.S. 9:2794.

7. *General Electric Co. v. Cuban–American Nickle Co.*, 396 F.2d 89 (5th Cir. 1968).

8. *Brenham v. South Pacific Co.*, 328 F.Supp. 119 (W.D.La.1971), aff'd. 469 F.2d 1095 (5th Cir. 1972), cert. denied 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972); and *Metzger v. Western Maryland R. R. Co.*, 30 F.2d 50 (4th Cir. 1929).

No contractual basis for indemnification exists, and third party plaintiffs must rely on equity. Indemnification under equitable principles was allowed by the Louisiana Supreme Court in *Appalachian Corporation v. Brooklyn Cooperage Co.*[9] The Court held a party who was actually at fault for a person's injury may be required to indemnify one who is "only technically or constructively" at fault. We noted in *Brenham*, 328 F.Supp. 119, 125, 126:

> The *Appalachian* decision was criticized and its rationale replaced in *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422 (1967). That case transported into Louisiana law *actio de in rem verso*, as developed in the French jurisprudence. According to the *Minyard* court:

> " * * * There are now five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i. e., the action is subsidiary or corrective in nature."

> *Minyard* has been criticized on the ground that the *actio* was incorrectly applied to the facts of that case. Comment, Actio De In Rem Verso in Louisiana: *Minyard v. Curtis Products, Inc.*, 43 Tul.L.Rev. 263 (1969); Litvinoff, Work of Appellate Courts–1967–1968, Obligations, 29 La.L.Rev. 200 (1969); Note, 14 Loy.L.Rev. 434 (1968). Nevertheless, we believe that *Minyard* was successful in making the *actio de in rem verso* a permanent part of the Louisiana law.

Plaintiff's right of recovery against Halliburton and Diamond M, and the right against Dr. Fresh (which she declined to assert), grow "from different seeds, rooted in different soil, and bear fruit similar only to the extent that each imparts the bitter-

sweet taste of monetary compensation for a tragic loss." *Phillips*, 219 F.Supp. 420, 423. Diamond M and Halliburton were jointly responsible for the manufacture and installation of the tank into which plaintiff fell and injured himself. The tank was allegedly improperly installed and lacked safety devices. It was alleged that Halliburton and Diamond M were guilty of negligence which was an active cause of the decedent's injuries.

With regard to the *Minyard* doctrine, the fifth requirement of subsidiary is not met. The compromise relieved Halliburton and Diamond M of all claims, including active negligence and fault. Then, too, although the compromise with the decedent's heirs impoverished Halliburton and Diamond M, Dr. Fresh experienced no enrichment as a result of the payment. This is true because plaintiff's claim against him had prescribed before he was made a party to the suit. Fresh was relieved of his liability, not through the settlement, but through the operation of prescription. *Brenham v. Southern Pacific*, 328 F.Supp. 119, 126.

The compromise agreement is contained in the record. It contains language indicating the assignment to third–party plaintiffs of any still existing right she might have had. But she had no rights against Fresh which could have been assigned. Any such right would have been an action pegged on malpractice, subject to LSA–R.S. 9:5628, which provides:

> "A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of discovery, in all events such claims must be filed at the latest within a

**9.** 151 La. 41, 91 So. 539 (1922).

period of three years from the date of the alleged act, omission or neglect."

Plaintiff was required to file suit against the doctor within one year of knowledge of the alleged act causing injury. Plaintiff's deposition shows she was dissatisfied with third–party defendant's treatment immediately after the death of her husband.[10] The depositions of the decedent's family members reveal the same dissatisfaction.[11] Consequently, any claim she might have against third–party defendant prescribed. Plaintiff has no rights against Fresh to assign. The release and consent judgment cannot provide an additional or alternative basis of recovery.

Louisiana has not voiced a policy that the right to indemnity otherwise existing is unavailable because the original plaintiff could not have recovered from the third party. Nevertheless, we believe it clear beyond peradventure that Dr. Fresh was entitled to assert his defense of prescription as a bar to the indemnity claim.

A claim for indemnity, whether based on contract tort or quasi contract theories, is prescribed by ten (10) years. La.Civil Code article 3444. The cause of action would arise only when the indemnitee has paid or has been condemned to pay the debt owed the injured party. Were we to hold as counsel suggests, the indemnity asserted would result in potential liability for a period in excess of ten years upon any and all physicians who treated an injured employee. We take advantage of the present opportunity to state that such a result would be profoundly inimical to the medical profession and its insurers. It would nullify the express provisions of LSA–R.S. 9:5628. Settlement negotiations would become unnecessarily complicated, to the disadvantage of the seaman.

Judgment is rendered in favor of third–party defendant, Dr. Fresh, and against the third–party plaintiffs.

10. Exhibit A, p. 32.

11. Exhibit B, p. 13; Exhibit C, p. 7.