**Kathy L. JOINER, Etc., et al., Plaintiffs,**

v.

**DIAMOND M DRILLING CO. and Halliburton Company, Defendants and Third-Party Plaintiffs-Appellants,**

v.

**Dr. C. Babson FRESH, Third-Party Defendant-Appellee.**

**No. 80–3896.**

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1982.

Rehearing Denied Oct. 14, 1982.

Joseph J. Weigand, Jr., Houma, La., for Diamond.

Allen L. Smith, Jr., Jeff M. Cole, Lake Charles, La., for Halliburton.

Provosty, Sadler & De Launay, LeDoux R. Provosty, Jr., F. Rae Swent, Alexandria, La., for Dr. C. Burton Fresh.

Before CLARK, Chief Judge, GOLD-BERG and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

This truncated appeal began with a jurisdictional *faux pas* and finds its *denouement* in our conclusion that there has been a French Revolution in Louisiana's law of solidary obligations.

This case arises from the offshore injury and subsequent onshore death of a seaman. The seaman's widow brought damage actions against her late husband's maritime employer and against the manufacturer of allegedly defective shipboard equipment. In turn, each of these maritime defendants brought third-party claims for contribution and indemnity against a Louisiana physician whose alleged onshore medical malpractice was said to have ultimately caused the seaman's death. The trial court held as a matter of Louisiana state law that the physician could not be liable to the third-party plaintiffs. Accordingly, the third-party claims for contribution and indemnity were dismissed. The shipowner and manufacturer then brought this appeal, arguing that the trial court had erred in its application of Louisiana contribution and indemnity law.

Having carefully reviewed this complex and unsettled quadrant of Louisiana jurisprudence, we conclude that the trial court acted properly in dismissing the third-party claims for indemnity. However, in light of several recent Louisiana state court decisions which have substantially reworked that state's doctrine of "solidary" liability, we find that we must reverse the dismissal of the contribution claims.

## I. FACTS AND PROCEDURAL HISTORY

### A. *In the "Real World"*

Ronald S. Joiner was injured while working aboard the *New Era*, a semi-submersible offshore drilling vessel owned and operated by the Diamond M Drilling Company ("Diamond M"). He was hurt while attempting to clean a shipboard mud tank manufactured by the Halliburton Company ("Halliburton"). After the accident, the injured seaman was hospitalized and placed under the care and treatment of a private physician of his own choosing, Dr. C. Babson Fresh. Unfortunately, the seaman's

condition steadily deteriorated. On August 31, 1977, six days after the accident, Ronald Joiner died.

### B. *In the District Court*

On November 15, 1977, Joiner's widow [1] brought suit against the Diamond M Drilling Company, alleging that her husband's injury and subsequent death had been caused by the shipowner's negligence. Mrs. Joiner later amended her complaint, adding Halliburton, the mud tank manufacturer, as a codefendant. In turn, Diamond M and Halliburton filed third-party complaints against Dr. C. Babson Fresh, alleging that it had been the doctor's onshore medical malpractice that ultimately caused Joiner's death. Specifically, the third-party plaintiffs claimed that the doctor's failure to diagnose and treat Joiner's basalar skull fracture and spinal meningitis resulted in the seaman's tragic death. Accordingly, each third-party plaintiff sought to recover contribution or indemnity "over and against" the physician.

On August 24, 1979, Mrs. Joiner settled her claims against both Diamond M and Halliburton for $300,000.[2] Unfortunately, the pretrial settlement failed to bring this litigation to a close. Although the original plaintiff was out of the case, Diamond M and Halliburton's third-party actions against Dr. Fresh remained before the court. Dr. Fresh responded to these contribution and indemnity claims with a motion to dismiss. The District Court took up this motion and granted summary judgment on the merits. *Joiner v. Diamond M Co.*, 500 F.Supp. 619 (W.D.La.1980). The third-party plaintiffs then brought this appeal.

### C. *In the Court of Appeals*

Although Diamond M and Halliburton's third-party claims had been adjudicated "on their merits," the trial court failed to indicate the basis upon which it presumed to exercise subject matter jurisdiction. Thus, when this case first came to us on appeal, our attention was focused solely upon the question of federal subject matter jurisdiction. After carefully reviewing the record on appeal, we found that the District Court had acted beyond the proper scope of its limited subject matter jurisdiction in adjudicating these third-party claims. *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035 (5th Cir. 1982) (Joiner I). Specifically, we held: (1) that the third-party actions against Dr. Fresh were state-law claims, not independently cognizable under the federal courts' admiralty jurisdiction, *id.* at 1038–1039; (2) that the record failed to establish that the third-party claims could be heard under the District Court's diversity jurisdiction, *id.* at 1039; and (3) that even if these claims were ancillary to the original admiralty action, the District Court erred in retaining and adjudicating the ancillary state-law actions following the pretrial settlement of the main federal action. *Id.* at 1041–44. We therefore declined to reach the merits and held that the case ought to have been dismissed for want of federal subject matter jurisdiction. *Id.* at 1044.

Following the publication of our opinion, Diamond M and Halliburton filed an eleventh-hour petition seeking to amend their pleadings so as to allege the facts necessary to establish diversity jurisdiction. The record on appeal could not support a finding of subject matter jurisdiction, however the appellants averred that if given the opportunity to amend their pleadings, they could indeed establish diversity. We therefore withheld the mandate, granted the appellants' motion to amend their pleadings, and remanded this case for the limited purpose of allowing the requested amendments.[3] Upon remand, the District Court found that the newly alleged facts did indeed warrant

---

1. Mrs. Joiner brought suit in her capacity as administratrix of her late husband's estate.

2. The plaintiff never filed any claims against Dr. Fresh.

3. 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Our order granting the appellants' post-publication motion follows as Appendix A.

the exercise of diversity jurisdiction.[4] Thus, the case now returns to us for adjudication "on the merits."[5]

## II. ISSUES ON APPEAL; AT LAST WE REACH "THE MERITS"

In granting summary judgment against the third-party plaintiffs, the District Court held as a matter of Louisiana state law that neither Diamond M nor Halliburton were entitled to contribution or indemnity from Dr. Fresh, and that their third-party claims were barred by Louisiana's one-year medical malpractice statute of limitations. *Joiner v. Diamond M Co.*, 500 F.Supp. 619 (W.D. La.1980). On appeal, Diamond M and Halliburton argue that it is federal admiralty law, and not Louisiana state law, that controls the question of whether they can recover contribution or indemnity from Dr. Fresh. In the alternative, the appellants contend that even if Louisiana state law is applied, contribution or indemnity *is* available and their claims against the doctor are not barred by Louisiana's medical malpractice statute of limitations.

## III. THE CLAIMS FOR CONTRIBUTION OR INDEMNITY: A QUESTION OF STATE LAW

■ The District Court held that Diamond M and Halliburton's claims for contribution or indemnity arise, if at all, under Louisiana state law. Diamond M and Halliburton cite this as error, arguing that their claims for contribution or indemnity against Dr. Fresh arise under *federal* law. Specifically, the appellants contend that their third-party actions against Dr. Fresh concern an alleged breach of a maritime contract. We cannot agree.

Diamond M and Halliburton suggest that a physician's treatment of an injured sea-

man creates an implied maritime contract between doctor and shipowner and that the physician's alleged malpractice constitutes a breach of that implied contract. The appellants maintain that their claims against Dr. Fresh can be seen as actions for breach of an "implied warranty of workmanlike performance" and therefore contend that their third-party complaints set forth "general maritime law" claims under the doctrine of maritime indemnity described in *Ryan Stevedoring Company Inc. v. Pan Atlantic Steamship Corporation*, 350 U.S. 124, 132, 76 S.Ct. 232, 236, 100 L.Ed. 133 (1956).

We find that the appellants' *Ryan* indemnity argument is foreclosed by our decision in *Penn Tanker v. United States*, 409 F.2d 514, 517–518 (5th Cir. 1969). In *Penn Tanker*, as in this case, a shipowner sought to recover *Ryan* indemnity from a hospital which had negligently treated an injured seaman. This Court unequivocally rejected the shipowner's *Ryan* indemnity argument, stating:

> [T]here can be no implied warranty running from the [hospital] to the shipowner.... We are unwilling to accept [the] tenuous argument that the relationship of ... hospitals and shipowners, concerning treatment of seaman, is comparable to those relationships which have been held to justify the application of *Ryan*.

409 F.2d at 517–518.

■ We adhere to our decision in *Penn Tanker*. A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract. We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been

---

**4.** We are now told that Diamond M and Halliburton are Delaware Corporations with their principal place of business in Texas, that Dr. Fresh is a citizen of Louisiana, and that the amount in controversy is in excess of $10,000. The District Court's *Memorandum Ruling on Remand* follows as Appendix B.

**5.** Although we now reach the merits of this state law controversy, we adhere to the hold-

ings set forth in *Joiner I*, 677 F.2d 1035 (5th Cir. 1982). When this case first came to us, the record on appeal could not support a finding of federal subject matter jurisdiction. The record now supports the exercise of federal jurisdiction only because the appellants have amended their pleading so as to set forth the necessary jurisdictional allegations.

consistently held that it is *state* law that controls in cases such as this.[6]

We conclude that these third-party claims against Dr. Fresh cannot be characterized as being actions for breach of a maritime contract, independently cognizable under the federal courts' admiralty jurisdiction. As the District Court recognized, these are state law claims that must be adjudicated under *Louisiana's* law of contribution and indemnity.

## IV. CONTRIBUTION OR INDEMNITY UNDER LOUISIANA STATE LAW

Under Louisiana law, "[i]ndemnity shifts the entire loss from a tortfeasor only technically . . . at fault to one primarily responsible for the act that caused the damage." *Green v. Taca International Airlines*, 304 So.2d 357, 359 (La.1974). In contrast, "[c]ontribution apportions the loss . . . and requires each [tortfeasor] to pay his virile share of the damage that results from the wrong." *Id.*

The District Court held that under the laws of Louisiana, neither Diamond M nor Halliburton could recover contribution or indemnity from Dr. Fresh. On appeal, Diamond M and Halliburton argue that the District Court erred in its application of Louisiana state law. Thus, we are called upon to review the trial court's interpretation and application of Louisiana's law of contribution and indemnity.[7]

### A. The Third-Party Claims for Indemnity

Diamond M and Halliburton paid $300,-000 to Mrs. Joiner in compensation for her husband's death. They now seek indemnity from Joiner's physician. In essence, Diamond M and Halliburton seek to place the entire burden of the settlement upon Dr. Fresh. In support of their indemnity claims, Diamond M and Halliburton argue that it was onshore medical malpractice ultimately caused the seaman's death. However, we must agree with the District Court and reject these claims for complete indemnity.

In Louisiana, a "party who is compelled to respond and to pay for [an] injury can have no action for indemnity against [an]other party . . . [unless the party seeking indemnity] is only technically or constructively at fault." *Appalachian Corporation v. Brooklyn Cooperage Co.*, 151 La. 41, 91 So. 539, 541 (1922). "[O]nly . . . a party not actually at fault, whose liability is vicarious and derivative . . . may be indemnified." *Dupree v. Pechinay Saint Gobain*, 369 So.2d 1075, 1081 (La.App.1979). *See also Thomas v. W & W Clarklift, Inc.*, 375 So.2d 375, 377 n.1 (La.1979), *aff'g* 365 So.2d 913, 918 (La.App.1978); *Green v. Taca International Airlines*, 304 So.2d at 359; *Bewley Furniture Co., Inc. v. Maryland Casualty Co.*, 285 So.2d 216, 219 (La.1973); *Carter v. Epsco*, 681 F.2d 1062, 1066 (5th Cir. 1982); *General Electric Co. v. Cuban American Nickel Co.*, 396 F.2d 89, 97–102 (5th Cir. 1968).

It is therefore important to note that Diamond M's and Halliburton's liability to the original plaintiff stemmed from

---

**6.** *See, e.g., United States Lines, Inc. v. U. S.*, 470 F.2d 487, 491 (5th Cir. 1972) (hospital located in Texas, Texas state law applied to shipowner's third-party claim against hospital); *Penn Tanker v. United States*, 409 F.2d 514, 519 n.9 (5th Cir. 1969) (hospital located in Georgia, Georgia state law applied to shipowner's third-party claim against hospital); *McCann v. Falgout Boat Co.*, 44 F.R.D. 34 (S.D. Tex.1968) (shipowner's third-party claim against doctor arises under state law); *Accord, Wood v. Standard Products Co., Inc.*, 456 F.Supp. 1098, 1103 (E.D.Va.1978) (injured seaman's claim against onshore doctor does not arise under federal maritime law, but is a state-law claim pendant to an admiralty action).

**7.** We who have been schooled in the common law are naturally reluctant to stray far into the legal thickets of a civil law dispute. We recognize that adjudicating the merits of this state law controversy will lead us into "a complex and unsettled quadrant of Louisiana jurisprudence." *Joiner v. Diamond M*, 677 F.2d 1035, 1044 n.28 (5th Cir. 1982). However, diversity jurisdiction gives these parties the right to have their state law action adjudicated in a federal forum. For this Court, an opportunity to sample Louisiana's distinctive jurisprudential cuisine "comes with the territory."

their own negligence; their debt to the plaintiff was not [8] and could not have been [9] based merely upon some theory of "vicarious" or "technical" liability. *Kossick v. United Fruit Company*, 365 U.S. 731, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961) (shipowner cannot be vicariously liable for the negligence of an onshore physician who is not the shipowner's agent).

Diamond M and Halliburton's liability to the injured party could have stemmed only from their own actual negligence. Therefore, they cannot recover complete indemnity from a third party who is alleged to have contributed to the damages. To allow Diamond M and Halliburton to shift the entire burden of the settlement to Dr. Fresh would itself constitute unjust enrichment. Thus, we must conclude that Diamond M and Halliburton are not entitled to complete indemnity. *Carter v. Epsco, Inc.*, 681 F.2d 1062, 1066 (5th Cir. 1982) (under Louisiana law, a negligent party may not recover indemnity and is limited to contribution).

### B. *The Third-Party Claims for Contribution*

Diamond M and Halliburton have argued that even if they are not entitled to indemnity, they are at least entitled to assert a claim to *contribution* from Dr. Fresh. In light of several Louisiana state court decisions, we must agree.

Article 2103 of the Louisiana Civil Code provides for the right of contribution among *solidary* obligors. Article 2103 states that

When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or a quasi-offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.[10]

La.C.C., Art. 2103.

In this case, the crucial question is whether a tortfeasor and a physician whose malpractice aggravates the injuries of the tortfeasor's victim are *solidary* obligors under Louisiana law.

The trial court held that Diamond M, Halliburton, and Dr. Fresh were *not* solidary obligors and that therefore contribution under Article 2103 was barred. Unfortunately, we find that the District Court's analysis cannot be sustained in light of several recent state court decisions which appear to have substantially reworked the doctrine of *in solido* obligations.[11]

The District Court found that because there was a "substantive difference in the remedy available from each tortfeasor, there [was] no solidarity ... between Dr. Fresh and the original defendants." *Joiner v. Diamond M Co.*, 500 F.Supp. 619, 621–22 (W.D.La.1980). This holding was apparently based upon the traditional rule that two parties cannot be solidary obligors unless their obligation to an injured party arises from the same act and theory of liability. *Cox v. Shreveport Packing Co.*, 213 La. 53, 34 So.2d 373 (1948); *Cline v. Crescent City Railroad Co.*, 41 La.Ann. 1031, 6 So. 851 (1889). However, just as the District Court rendered its decision, the traditional rule

---

**8.** Mrs. Joiner, the original plaintiff, alleged that it was the unseaworthiness of Diamond M's vessel and the defective design and manufacture of Halliburton's mud tank which caused her late husband's death. Mrs. Joiner never even suggested that Diamond M or Halliburton might be vicariously liable for the actions of Joiner's physician.

**9.** A shipowner is vicariously liable for the negligence of a *shipboard* physician. *DeZon v. American President Lines*, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1942). Similarly, a shipowner may be held liable for its *negligent selection* of an onshore physician. *Steamship Corporation v. Sambula*, 405 F.2d 291 (5th Cir. 1968). However, we can find no case holding a

shipowner *vicariously* liable for the negligence of an onshore physician selected by the injured seaman himself.

**10.** If the accident had occurred after August 1, 1980, the provisions of La.C.C., Art. 2103, *as amended*, would provide for contribution "in proportion to each debtor's fault."

**11.** In *Joiner I*, we noted that this area of Louisiana law currently appears to be in a state of flux and we cited to several recent Louisiana Supreme Court decisions that substantially revised the doctrine of *in solido* obligations. 677 F.2d at 1044, n.28.

was expressly overruled by the Louisiana Supreme Court. *Foster v. Hampton*, 381 So.2d 789, 791 (La.1980). Now the rule is that "[an] obligation may be in solido *even though the obligations of the obligors arise from separate acts or by different reasons.*" *Hoefly v. G.E.I.C.O.*, 418 So.2d 575, 579 (La.1982) (emphasis added); *see also Foster v. Hampton, supra; Carter v. Epsco*, 681 F.2d 1062, 1066 (5th Cir. 1982). The parties need not be joint tortfeasors in order to be solidary obligors. *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La.1981). The only crucial element to a finding of solidarity is "each debtor being obliged to the same thing." *Hoefly v. G.E.I.C.O.*, 418 So.2d 575, 579 (La.1982); La.C.C., Article 2081; *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La.1981).

▇ In this case, each of the parties, if liable, would have been liable for the same thing—"total reparation of the damages to the victim." *Sampay v. Morton Salt Co.*, 395 So.2d at 328. Dr. Fresh's negligence is alleged to have caused Joiner's death; Diamond M's negligence is alleged to have caused Joiner's death; and Halliburton's negligence is alleged to have caused Joiner's death. Although their obligations arise from different acts and for different reasons, they are each obligated for the same thing. Thus, they are solidary obligors.[12]

In light of recent Louisiana state court decisions, we must conclude that Diamond M, Halliburton and Dr. Fresh are indeed *solidary obligors*, and that therefore these third-party plaintiffs may maintain an action for contribution against Dr. Fresh under La.C.C., Art. 2103.

#### C. The Statute of Limitations Does Not Bar These Contribution Claims

▇ The District Court held that Louisiana's one-year medical malpractice statute of limitations barred these third-party actions because the claims for contribution or indemnity had been filed more than one year after Ronald Joiner's death. *Joiner v. Diamond M*, 500 F.Supp. 619, 624 (W.D.La. 1980). We cannot agree.

The Louisiana Supreme Court has expressly stated that a third-party plaintiff may bring suit to recover contribution from a doctor, even when the statute of limitations bars the actual victim of the doctor's malpractice from bringing suit. *Ferguson v. Lankford*, 374 So.2d 1205, 1207 (La.1979). In Louisiana, "the right . . . of contribution does not arise until after judicial demand is made on . . . the solidarily obligated tortfeasor." *Id.* at 1207. Thus, "[p]rescription does not begin to run against a claim for contribution until the [party seeking contribution] has been required to pay the common debt." *Thomas v. W. & W. Clarklift, Inc.*, 375 So.2d 375, 378 (La.1979).

▇ Although neither third-party plaintiff brought suit against Dr. Fresh within one year of Joiner's death, each of the third-party plaintiffs *did* file claims against Dr. Fresh within one year of the day on which they were first sued.[13] Thus, we must conclude that these third-party claims for contribution were not time-barred.

### IV. CONCLUSION

Diamond M and Halliburton's third-party claims against Dr. Fresh arise, if at all, under Louisiana state law. We hold that the trial court acted properly in dismissing Diamond M and Halliburton's third-party claims for indemnity. However, with regard to the trial court's disposition of the contribution claims, we reach a different conclusion.

---

**12.** Two Louisiana appellate courts have now expressly held that a physician whose negligent treatment aggravates a tort victim's injuries *is* solidarily liable with the initial tortfeasor. *Erdey v. American Honda, Inc.*, 415 So.2d 449, 451 (La.App.1982); *Berger v. Fireman's Fund Insurance Company*, 305 So.2d 724, 727–729 (La.App.1974).

**13.** Diamond M was first sued on November 15, 1977, and filed its third-party claim against Dr. Fresh less than a year later, on October 28, 1978. Halliburton was sued by Mrs. Joiner on June 22, 1979 and filed its third-party claim against Dr. Fresh two months later, on August 28, 1979. Thus, each third-party plaintiff brought its claim for contribution less than a year after the day it had first been sued.

The trial court held that Diamond M, Halliburton, and Dr. Fresh were *not* solidary obligors and that there could be no claims for contribution between them. However, the learned District Judge could not have anticipated the recent effusion of "solidary liability" jurisprudence emanating from the Louisiana state courts. We have had the opportunity to review these late-breaking state court decisions and find that under Louisiana's new doctrine of solidarity, Diamond M, Halliburton and Dr. Fresh are indeed "solidary obligors." Accordingly, we must reverse that portion of the District Court's judgment dismissing the third-party plaintiffs' contribution claims.

For these reasons, the judgment dismissing the third-party claims for *indemnity* is AFFIRMED, the judgment dismissing the *contribution* claims is REVERSED and this cause is REMANDED for further proceedings not inconsistent with this opinion.

## APPENDIX A

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 80–3896

KATHY L. JOINER, Etc.,
ET AL.,

Plaintiffs,

versus

DIAMOND M DRILLING CO.
and HALLIBURTON
COMPANY,

Defendants and Third-Party Plaintiffs-Appellants,

versus

DR. C. BABSON FRESH,

Third-Party Defendant-Appellee.

1. Both Diamond M and Halliburton now allege that they are Delaware corporations with principal places of business in Texas and that the third-party defendant-appellee is a citizen of Louisiana.

2. We note that the appellants' motion comes extraordinarily late in the game. The subject matter jurisdiction problems in this case were first raised by the appellee's brief nearly a year ago. Questioning by this panel during oral argument focused upon the jurisdictional is-

Appeal from the United States District Court for the Western District of Louisiana.

ON PETITION FOR REHEARING

Before CLARK, Chief Judge, GOLDBERG and WILLIAMS, Circuit Judges.

PER CURIAM:

On June 7, 1982, this Court issued an opinion and order in the above captioned matter holding that the record in this case could not support a finding that the action was cognizable under the federal court's limited subject-matter jurisdiction. Following publication of our opinion, third-party plaintiff-appellants Diamond M Drilling Co. and Halliburton have petitioned this Court seeking leave to amend their pleadings so as to allege the facts necessary to establish federal diversity jurisdiction.[1]

28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This Court has held that this section of the Code is to be liberally construed. *Miller v. Stanmore*, 636 F.2d 986 (5th Cir. 1981); *McGovern v. American Airlines*, 511 F.2d 653 (5th Cir. 1975). Although the record now before this Court cannot support a finding of subject matter jurisdiction, the appellants aver that if given the opportunity to amend their pleadings, they can indeed establish diversity jurisdiction.

In light of the liberal amendment provision set forth in 28 U.S.C. § 1653, we hereby grant the appellants' motion for leave to amend their pleadings.[2] We therefore remand this cause to the district court for the

sues. Nevertheless, the appellants failed to seek leave to amend their complaints. Instead, the appellants took the position on appeal that the record *was* sufficient to sustain the exercise of subject matter jurisdiction. We think that the far more responsible practice would have been for the appellants to have made this motion when subject matter jurisdiction was first questioned rather than waiting until publication of our opinion revealed that they had lost this issue on appeal.

limited purpose of allowing the requested amendments.

Upon remand, we of course expect that the third-party defendant will be afforded an opportunity to answer any amended allegations and that the district court will then make appropriate findings of fact and conclusions of law. Upon completion of these proceedings, the district court is directed to transmit any amended pleadings and findings to the clerk of this Court.

This Court will retain jurisdiction over this cause pending completion of the above-described limited remand. Upon receipt of the supplemental record this Court will make further determinations as is deemed appropriate.

## APPENDIX B

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

NO. 80–3896

---

KATHY L. JOINER, etc.,
ET AL.,

      Plaintiffs,

    VS.

DIAMOND M DRILLING
CO. and HALLIBURTON
COMPANY,

      Defendants and Third-
      Party Plaintiffs-
      Appellants,

    VS.

DR. C. BABSON FRESH,

      Third-Party Defendant-
      Appellee.

Appeal from the United States District Court for the Western District of Louisiana.

EDWIN F. HUNTER, Jr., Senior District Judge:

## MEMORANDUM RULING PURSUANT TO REMAND

Appellants petitioned the United States Court of Appeals for the Fifth Circuit for permission to amend their pleadings so as to allege facts necessary to establish federal

---

1. The original plaintiff settled with Diamond M and Halliburton Company for $300,000. Halli-

diversity jurisdiction. The appellate court granted appellants' motion and remanded this cause to the district court for the limited purpose of allowing the requested amendments.

The amendments have now been made. The third party defendant (Dr. Fresh) has been afforded an opportunity to answer the amended allegations but has not chosen to do so. Rather, his counsel (Mr. LeDoux R. Provosty, Jr.) has informed the writer that he does not contest the veracity of the amendments nor of the affidavits in support of the amendments.

Pursuant to the mandate of the appellate court, we now enter findings of fact and conclusion of law on the jurisdictional issue.

## FINDINGS OF FACT

1. Third party defendant, Dr. C. Babson Fresh, was at the time of filing suit, and is now, a citizen and resident of the State of Louisiana.

2. Diamond M Drilling Company, a third party plaintiff, was at the time of the filing of this suit, and is now, a corporation incorporated and existing under the laws of the State of Delaware, and is a citizen of that state, and has its principal place of business in the State of Texas.

3. Halliburton Company, a third party plaintiff, was at the time of the filing of this suit, and is now, a corporation incorporated and existing under the laws of the State of Delaware and is a citizen of that state, and has its principal place of business in the State of Texas.

4. The amount in controversy in each instance exceeds $10,000.[1]

## CONCLUSION OF LAW

This Court has jurisdiction over this cause, pursuant to its diversity jurisdiction.

The Order of remand filed in the appellate court on July 12, 1982, noted that it would retain jurisdiction over this cause and that the district court should transmit

---

burton and Diamond M now proceed against Dr. Fresh for this amount.

any amended pleadings and findings to the Clerk of the United States Court of Appeals for the Fifth Circuit. We now do so.[2]

THUS DONE AND SIGNED at Lake Charles, Louisiana, on this the 12th day of August, 1982.

2. A copy of the Fifth Circuit's per curiam opinion of July 12, 1982 is attached.