681 F.2d 1062
 Robert CARTER, Jr., Plaintiff,
v.
EPSCO, INC., Defendant-Appellant,
v.
A. O. SMITH and CNA Insurance Co., Defendants-Appellees,
v.
UNION CARBIDE CORP., Defendant-Appellant.
William C. WOODWARD, Plaintiff,
v.
A. O. SMITH-INLAND & CNA Insurance Co., Defendants-Appellees,
v.
UNION CARBIDE CORP., et al., Defendants-Appellants.
 No. 81-3021.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 6, 1982.
 
 Donald S. Zuber, Myron A. Walker, Jr., Baton Rouge, La., for EPSCO.
 Dominic J. Gianna, New Orleans, La., for Union Carbide.
 Joseph F. Keogh, Baton Rouge, La., for A. O. Smith and CNA Ins. Co.
 John F. McKay, Baton Rouge, La., for Carter.
 Appeals from the United States District Court for the Middle District of Louisiana.
 Before BROWN, GOLDBERG and POLITZ, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 The appeal from the district court's dismissal, 511 F.Supp. 99, of the cross-claims of EPSCO, Inc. and Union Carbide Corporation against A. O. Smith-Inland, Inc. poses a thorny question of Louisiana law in this diversity case. We remand for such further fact-finding as may prove necessary, and the application of legal theories thus far not considered, under which EPSCO and Union Carbide may be entitled to recover.
 
 
 2
 The facts already developed are readily collated. In February 1977, Union Carbide entered into a contract with EPSCO looking to the replacement of a carbon steel river waterline at Union Carbide's Texas City, Texas plant. The agreement specified the use of 16 fiberglass pipe manufactured by A. O. Smith. The pipe required "fabrication" to fit the intended use. EPSCO secured[1] and delivered the necessary pipe to U. S. Machine and Equipment Company, a Baton Rouge, Louisiana firm, with whom it contracted for the assembly work.
 
 
 3
 A. O. Smith provided the pipe, in sixty-foot sections, and furnished a special tool and adhesive kits needed to taper and join the sections. Union Carbide furnished drawings to guide the assembly by the employees of U. S. Machine. The Union Carbide/EPSCO fixed price contract required that after fabrication the pipe was to be subjected to a hydrostatic pressure test of 150 pounds per square inch. During the testing procedure, Robert Carter, Jr. and William Woodward, employees of U. S. Machine, were seriously injured.
 
 
 4
 Personal injury actions brought by Carter and Woodward, against A. O. Smith, Union Carbide, EPSCO, and their liability insurers, were consolidated. Reliance Insurance Company, the workers' compensation insurer, intervened. Union Carbide and EPSCO cross claimed against A. O. Smith. Just prior to trial, EPSCO, Union Carbide, and Reliance settled with the plaintiffs,[2] who reserved their rights against A. O. Smith. Reliance preserved its position on its intervention in the event the plaintiffs recovered from A. O. Smith.[3]
 
 
 5
 The plaintiffs' suit proceeded to trial before a jury, with the defendants stipulating that the cross claims were to be decided by the court based on the evidence thus presented. On special interrogatories, the jury found that the plaintiffs had been injured by a defective product manufactured by A. O. Smith, that the pipe had not been subject to misuse or mishandling, and that the plaintiffs had not assumed the risk of injury. Further, and of particular relevance to the district court's disposition of the cross claims, the jury found both Union Carbide and EPSCO free of any negligence causing injury to either plaintiff. Subsequently the issue of quantum was tried and the jury fixed damages for Carter at $475,000 and for Woodward at $745,000. The intervention of the compensation carrier was honored, payable out of the sums awarded.
 
 
 6
 Based on the jury's findings on negligence, the district court rejected the EPSCO and Union Carbide cross claims for indemnification by A. O. Smith. The trial court's reasoning is straightforward: the jury's finding that neither Union Carbide nor EPSCO was negligent precluded the categorization of EPSCO, Union Carbide, and A. O. Smith as joint tortfeasors. See La.Civ.Code art. 2324.[4] Accordingly, the district court concluded, under Louisiana Civil Code article 2103,[5] that EPSCO and Union Carbide were not entitled to contribution, an obvious preclusion, then, of indemnification.[6]
 
 
 7
 In resisting the claim of error proffered by EPSCO and Union Carbide, A. O. Smith invites our attention to the opening paragraph of Domingue v. Luke Fruge, Inc., 379 So.2d 490 (La.App.1980):
 
 
 8
 The issue presented by this appeal is whether indemnity is available after a settlement agreement, prior to trial, between one of several defendants and the plaintiff where a subsequent jury verdict completely exonerates from liability the settling defendant. The district court held that indemnity is not available. We affirm.
 
 
 9
 (Emphasis added.) We are not persuaded that Domingue resolves the dispute before us today. The quoted passage merely states the proposition that indemnity does not lie when a settling defendant subsequently is completely exonerated from all liability to the injured party. We do not perceive the case before us as fitting into that neat mould.
 
 
 10
 As owner of the defective fiberglass pipe, Union Carbide[7] could have been liable to Carter and Woodward under a theory of negligence.[8] But Union Carbide may also have been liable under the provisions of Civil Code article 2317.[9]
 
 
 11
 Article 2317, as recognized by the Supreme Court of Louisiana in Loescher v. Parr, 324 So.2d 441 (La.1975), a scholarly opinion by Justice Tate, incorporates into Louisiana law a concept of legal fault, imposing liability on the owner or guardian of a thing, for damages caused by its vice or defect, even though there be no personal negligence. The actionable fault of the owner or guardian, in such an instance, is "based upon the breach of his legal obligation to keep his thing in such condition or in such control that it does no damage to others." Id. at 448. See, e.g., Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Marquez v. City Stores, Co., 371 So.2d 810 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Ferguson v. State Farm Fire & Cas. Co., 398 So.2d 72 (La.App.1981); Waller v. Farmland Indus., Inc., 392 So.2d 1099 (La.App.1980). See also Rodrigue v. Dixilyn Corp., 620 F.2d 537 (5th Cir. 1980). The financial accountability envisioned by article 2317 is "strict liability." Hunt v. City Stores, Inc., 387 So.2d at 588.[10]
 
 
 12
 The facts of this case indicate that Union Carbide was liable to Carter and Woodward as a solidary obligor with A. O. Smith, see La.Civ.Code art. 2091,[11] but not as a joint tortfeasor.[12]
 
 
 13
 Recently, the Supreme Court of Louisiana, in rejecting the conceptual distinction between perfect and imperfect solidarity, made clear that the accountability involved is solidary even though the liability of one defendant is based on personal negligence and the liability of a second defendant is based on a relationship with the negligent actor (such as master-servant, principal-agent, parent-child). Foster v. Hampton, 381 So.2d 789 (La.1980). See Sutton v. Champagne, 141 La. 469, 75 So. 209 (1917); La.Civ.Code art. 2320; Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981); Comment, Tilting Against Windmills: A Solidary Rejoinder, 41 La.L.Rev. 1279 (1981). In addition, the Supreme Court of Louisiana has made it clear that two defendants bound to the same obligee, although under different theories of law, may yet be solidary obligors. See Thomas v. W & W Clarklift, Inc., 375 So.2d 375 (La.1979) (one defendant obligated under warranty theory with the other defendant bound by reason of negligence); Appalachian Corp., Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922) (negligence and obligation to maintain building in good repair, see La.Civ.Code arts. 667 and 2322). See also Comment, supra note 10, at 695-701.
 
 
 14
 As we appreciate this record, Union Carbide's liability to the injured workmen would not be premised on negligence, but rather, it would be based on ownership of the injury-causing instrumentality. This liability would be in solido with the manufacturer of the defective product, and may entitle Union Carbide to reimbursement from A. O. Smith. An "innocent" debtor held liable in solido for the creditor's protection may have the recourse of indemnification against a co-obligor who is the actual wrongdoer. This equitable adjustment of rights among solidarily bound debtors has been recognized by the Supreme Court of Louisiana. Appalachian Corp. v. Brooklyn Cooperage Co. and Sutton v. Champagne are early examples. See Johnson, Developments in the Law, 1979-1980-Obligations, 41 La.L.Rev. 355, 358 (1981).[13] And we find in the Civil Code section titled "Of the Rules Which Govern Obligations with Respect to Debtors In Solido," article 2106, which, while somewhat cryptic in its phraseology, supports this ultimate apportionment of the responsibility of solidary obligors. Article 2106 ordains that "if the affair for which the debt has been contracted in solido, concerns only one of the co obligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities."
 
 
 15
 The record before us does not permit of a definitive answer with respect to EPSCO's cross claim. As with Union Carbide, its claim may not be rejected merely because of the jury's negligence findings. EPSCO also may have had a solidary exposure based on grounds other than simple negligence. Article 2317 speaks of "things which we have in our custody." EPSCO apparently arranged for the pipe, secured it from A. O. Smith, and furnished it to U. S. Machine. On remand and in reconsidering this issue, the district court should make appropriate factual findings and reach legal conclusions of the applicability of the foregoing authorities and discussion to EPSCO.
 
 
 16
 We remand for that purpose. The district court may wish to conduct an evidentiary hearing. We do not intend any statement of fact referred to herein, assumed or otherwise, to be taken as etched in granite. The district court may make those findings of fact pertinent to the indemnification claims it considers necessary. Likewise, the court may freely reach those conclusions of law appropriate to resolution of this matter. In doing so, the district court may wish to re-examine its conclusion that A. O. Smith is not entitled to judgment adjustment as a consequence of the settlements and releases. See La.Civ.Code art. 2203. And the court, on remand, may examine any other aspects of the cross claim not discussed herein.
 
 
 17
 REVERSED and REMANDED for further proceedings not inconsistent herewith.
 
 
 
 [1]
 In passing, the trial court referred to Union Carbide as "owner" of the pipe. Because title is a critical factor, on remand the court should examine this issue and determine whether Union Carbide was indeed the owner and whether EPSCO has an assertible claim of ownership or control over the pipe
 
 
 [2]
 Woodward received $207,000-Union Carbide and EPSCO paid $197,000 and Reliance paid $10,000. Carter received $188,000-Union Carbide and EPSCO paid $178,000 and Reliance paid $10,000. Reliance was reimbursed this $20,000 by Union Carbide and EPSCO
 
 
 [3]
 As stated by the trial court:
 Plaintiffs granted complete releases to EPSCO, Union Carbide and Reliance, all parties reserving all rights against A. O. Smith. It was further agreed that if plaintiffs secured judgment against A. O. Smith, Reliance would recover on its compensation intervention to the extent allowed by law. EPSCO and Union Carbide made partial assignments to plaintiff of their cross claims against A. O. Smith, to the extent that Reliance's compensation intervention might reduce the recovery on the cross claims to be paid, respectively, to EPSCO and Union Carbide.
 
 
 [4]
 Article 2324 states:
 He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
 Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
 
 
 [5]
 Article 2103 provides:
 When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or a quasi-offense, the debt shall be divided between them. If the obligation arises from a contract or a quasi-contract, each debtor is liable for his virile portion. If the obligation arises from an offense or a quasi-offense, it shall be divided in proportion to each debtor's fault.
 A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff.
 The text of articles 2103 and 2324 set forth is as amended by Act 431 of 1979. The 1979 amendments are not material to our disposition.
 
 
 [6]
 The trial court observed that the jury's exoneration of EPSCO and Union Carbide from negligence also prevented any reduction in the judgments rendered against A. O. Smith as a consequence of the settlements and releases
 
 
 [7]
 See note 1, supra
 
 
 [8]
 The first paragraph of Civil Code article 2315 prescribes: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
 
 
 [9]
 Article 2317 reads, in pertinent part:
 We are responsible, not only for damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
 (Emphasis added.)
 
 
 [10]
 "The liability arises from ... (the) legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others." Loescher v. Parr, 324 So.2d at 446. See Andrus, Strict Liability Under Civil Code Articles 2317, 2318, and 2321: An Initial Analysis, 25 La.B.J. 105 (1977); Comment, Prescribing Solidarity: Contributing to the Indemnity Dilemma, 41 La.L.Rev. 659 (1981); Note, The Demise of the Latent Brake Defect Doctrine in Louisiana, 40 La.L.Rev. 847 (1980); Note, The "Discovery" of Article 2317, 37 La.L.Rev. 234 (1976)
 
 
 [11]
 La.Civ.Code art. 2091:
 There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.
 
 
 [12]
 Unlike the general common law notion of joint tortfeasors (including the situation of two or more negligent entities concurring to injure another, rendering joint and several liability for damages caused), properly read, Louisiana's rule is narrow. Article 2324's text is couched in conspiratorial terms: "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act." A classic example is the casting of all persons participating in the tarring and feathering of another as joint tortfeasors, liable in solido. Newsom v. Starns, 142 So. 704 (La.App.1932)
 
 
 [13]
 We do not view the decision in Hunt v. City Stores, Inc., as containing a contrary holding. We recognize that the Hunt court permitted only contribution under article 2103. However, it is significant that the owner of the unreasonably dangerous escalator, manufactured by another, was fully aware of the product's vice. Because City Stores "failed to warn the public of a known hazard," 387 So.2d at 590, it was found at fault and shared the loss equally with the manufacturer. In the case at bar, the jury's findings absolved Union Carbide of negligence. Its responsibility, as discussed herein, is based on statutorily imposed legal fault, dehors any requirement of negligence. La.Civ.Code art. 2317