617 So.2d 1329 (1993)
Russell FRANCIS, Sr., et al., Plaintiffs-Appellees,
v.
AMERICAN WELL SERVICE AND DRILLING, INC., et al., Defendants, and
Armco Steel Corporation, Defendant-Appellant.
No. 92-790.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1330 Alfred Frem Boustany II, Lafayette, for Russell Francis, etc.
William M. Bass, Lafayette, for Armco Steel.
Craig Marks, Lafayette, for The Insurance.
Alan K. Breaud, Alfred Smith Landry, Jr., Lafayette, for Southwest.
Alan K. Breaud, Lafayette, for Mission.
Susan Carol Severance, Lafayette, for LIGA.
David Arthur Hurlburt, Lafayette, for Fireman's Fund.
Before DOMENGEAUX, C.J., and GUIDRY and WOODARD, JJ.
DOMENGEAUX, Chief Judge.
Russell Francis, Sr. and his family filed suit for injuries Russell sustained when an allegedly defective wire rope broke during off loading of a mud pump at a rig site. They initially sued American Well Service and Drilling, Inc., whose employee supplied the rope and assisted in the off loading, and two retailers who allegedly sold the rope to American Well Service. Three years after the accident, the plaintiffs named as defendant Armco Steel Corporation, the alleged manufacturer of the rope. After proceeding to trial against Armco only, the plaintiffs obtained a judgment and Armco appeals.

FACTS
Before the accident in question, Russell Francis, Sr. was an independent trucker with many years of heavy hauling experience in the oil field. He owned two 18-wheelers, which he leased to Superport Transport, Inc.; he drove one truck, and he hired another driver, Raymond Benjamin, for the other truck.
On January 19, 1985, the date of the accident, Francis and Benjamin were transporting two mud pumps to a rig site in DeRidder when Benjamin's truck broke down. The men decided to continue on to DeRidder with Francis' load and return for Benjamin's truck once Francis' had been unloaded. At the rig site, Francis and Benjamin were unable to "shake off" the mud pump from Francis' truck, so they enlisted the help of another trucker on the scene, *1331 Leo Richard, an employee of American Well Service.
The plan was for Richard to pull the pump forward, using his truck as a winch. Richard backed his truck to the rear of Francis' truck. He made a bridle or a sling around the pump with a 1" steel line that was on his truck, and he hooked the end of the rope, which was knotted, to a tail chain on his truck. Francis stood several yards from the two trucks, directing the drivers. As Richard tightened the line, the pump began to slide forward. After it moved about 1½ feet, the wire rope broke, throwing the tail chain into the air. The chain struck Francis, knocking him down and shattering the bones in his right wrist.
Richard testified that the rope broke five or six feet from its knotted end. He was certain that the line broke, as opposed to the tail chain coming undone. Benjamin placed the point of the break at about two to three feet from the tail chain. Benjamin and Richard were experienced heavy haulers. They both agreed that a 1" wire rope was commonly used for this type of off loading and that the procedure used was standard practice in the oil field.
Richard testified that the rope was new; he had it for only two to three weeks on his truck before the accident and had used it only on 10 days during that time period. He expected a 1" steel rope to last between six months and a year depending upon how hard it was used. Richard and Benjamin both testified that the rope had distinctive light green markings, and they identified a rope manufactured by Armco as having the same markings.
Francis needed a permit to haul the mud pump; he testified that the weight load for his permit was 67,000 to 68,000 pounds. The plaintiffs introduced a brochure published by Armco which stated that the breaking strength of its lowest grade of wire rope was 83,600 pounds.

PROCEDURAL HISTORY
The plaintiffs proceeded to a bench trial against Armco only, after settling with the other defendants. At the close of the plaintiffs' case, Armco orally pleaded prescription, contending the evidence presented failed to prove a solidary relationship between Armco and any of the timely sued defendants. The trial judge announced that he would take the question of prescription under advisement, and defense counsel inquired if evidence presented in the defense's case in chief would be considered by the court in deciding the prescription issue. The trial judge replied that he would let in all of the evidence but would allow briefs on what evidence should be considered on the exception. The defense then rested without offering any evidence.
After taking the matter under advisement, the trial judge ruled in favor of Armco on the exception of prescription. The plaintiff moved for a new trial, seeking to introduce into evidence certain pleadings which were excluded upon Armco's objection. The trial court granted the motion for a new trial, but limited the new evidence admitted to the plaintiffs' initial and seventh amended petitions. The trial court later reversed its previous ruling on prescription, finding that Armco, the manufacturer of the rope, was solidarily liable with American Well Service, the custodian of the defective "thing." In subsequent rulings, the trial court awarded total damages of $746,986.53 to the plaintiffs and apportioned 100% fault to Armco.
On appeal, Armco argues that (1) the trial court erred in limiting the scope of the new trial, thereby denying Armco the opportunity to put on a defense; (2) the trial court erred in reversing its first ruling on the question of prescription; and (3) the final ruling is internally inconsistent because it holds that American Well Service and Armco are solidary obligors, yet it assesses Armco with 100% fault.

NEW TRIAL
Armco argues the trial court deprived it of the opportunity of presenting a defense by limiting the scope of the new trial. After reviewing the transcript of the trial, we must disagree.
La.C.C.P. art. 1971 gives the trial judge the authority to grant a partial new *1332 trial. Implicit in this authority is the power to define and limit the scope of that trial. Devillier v. Traders & General Ins. Co., 321 So.2d 55 (La.App. 5th Cir.1975), writ denied, 325 So.2d 273 (La.1976). The record reveals that Armco was not prevented from putting on a defense; rather, it chose not to. Apparently, believing that its defense would establish solidarity with American Well Service, Armco chose not to cross examine several of the plaintiffs' witnesses and, ultimately, to rest without offering any evidence. Armco made a strategic decision to forego presentation of any evidence that may have reduced its culpability, or even exonerated it, on the merits. Under these circumstances, we cannot say that the trial court abused its discretion in limiting the evidence introduced at the new trial. Further, the additional evidence that was introduced, the plaintiffs initial and amending petitions, only established Armco's contention that it was sued over one year after the accident. We find no error in the trial court's action.

PRESCRIPTION
Armco contends that the plaintiffs' claim against it, filed three years after the accident, has prescribed because the evidence at trial failed to establish a solidary obligation between Armco and the timely sued defendant, American Well Service.[1]
The burden of proving a tort action has prescribed rests upon the defendant or party pleading prescription; however, once it is proved that more than one year has elapsed between the time the tort occurred and the filing of the suit, the burden shifts to the plaintiff to prove an interruption or suspension of prescription. Scott v. Burden, 527 So.2d 468 (La.App. 5th Cir.1988).
The interruption of prescription against one solidary obligor is effective against all solidary obligors. La.C.C. arts. 1799 and 3503. The party claiming solidarity between two parties has the burden of proving it, thus interrupting the prescriptive period. Scott, supra. If the pleadings factually allege solidarity, a plea of prescription should not be sustained in the absence of controverting evidence; however, a later plea of prescription may be maintained if trial on the merits does not establish solidarity. Givens v. Professional Nurses Home Health Services, Inc., 516 So.2d 120 (La.1987).
Both the manufacturer and the custodian (under La.C.C. art. 2317) of a defective thing are strictly liable in solido for any resulting injuries. Brown v. Sears, Roebuck & Co., 514 So.2d 439 (La.1987). See also Carter v. EPSCO, Inc., 681 F.2d 1062 (5th Cir.1982). Thus, we must decide if the plaintiffs have proved their case against both the custodian and the manufacturer to determine whether Armco's plea of prescription should have been maintained.
To recover against the custodian under art. 2317, the plaintiff must prove he was injured by a thing, the thing was in the defendant's custody, there was a vice or defect containing an unreasonable risk of harm in the thing, and the injured person's damages arose from such a defect. Spott v. Otis Elevator Co., 601 So.2d 1355, 1363 (La.1992), citing Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987).
Recovery against the manufacturer of a defective product requires a showing that the product was defective when it left the manufacturer's control; at the time of its failure the product was subject to normal use; the product was unreasonably dangerous in that use; and the injuries were proximately caused by the defect. Norris v. Bell Helicopter Textron, 495 So.2d 976 (La.App. 3d Cir.1986), writ denied, 499 So.2d 85 (La.1987).
*1333 To recover under both causes of action the plaintiffs must prove the rope was defective. The mere fact that the rope broke, resulting in an accident, does not prove that the rope was defective. Schexnaider v. State Farm Ins. Co., 541 So.2d 223 (La.App. 4th Cir.1989). However, a defect may be inferred from the circumstances of the accident. Brown, supra. In the instant case, there was testimony that the rope had been purchased only three to four weeks before the accident and had only been used on approximately 10 days during that time period. Three experienced truckers testified that a 1" wire line was the most common weight for off loading heavy objects and that the procedure used was a standard practice in their industry. The plaintiffs further put on evidence that the weight of the mud pump, approximately 68,000 pounds, was within the manufacturer's published breaking strength of the rope. In the absence of any evidence controverting these facts, we can find no error in the trial court's conclusion that the rope was defective. This same evidence also supports a finding that the defect existed when the rope left the manufacturer's control and that the product was in its normal, intended use at the time of the accident.
To establish fault under art. 2317, the plaintiffs must also show that the rope was in the custody or "garde" of American Well Service. The "garde" is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those to which one bears such a relationship as to have the right of direction and control over them and to draw some kind of benefit from them. King v. Louviere, 543 So.2d 1327 (La.1989). The rope in question was furnished by an employee of American Well Service. The evidence established that a 1" wire rope was customarily used in oil field hauling, the service provided by American Well Service. As such, American Well Service derives substantial benefit from the use of the rope by its employees. We have little difficulty in concluding that American Well Service was in the best position to detect and to eliminate any risk of harm arising from the use of the rope.
Williams v. Sewerage and Water Board of New Orleans, 611 So.2d 1383 (La.1993) is the most recent recognition of the principle that an obligation may be in solido even though the obligations of the obligors arise from separate acts or by different reasons. It matters not that liability is based on different causes of action. The three requirements for solidarity are that (1) each obligor is "obliged to the same thing," (2) each is liable for the whole performance, and (3) payment by one obligor exonerates the other obligor as to the creditor. We conclude the plaintiffs have proved a solidary relationship between American Well Service and Armco; therefore, a timely filed suit against one interrupted prescription as to the other.

APPORTIONMENT OF FAULT
The trial court correctly found that the plaintiffs established a solidary relationship between Armco and American Well Service. Yet, the court held the manufacturer, Armco, 100% at fault, concluding that "liability ultimately flows upward" in this case. The court's reasoning may have been the correct approach in deciding claims for contribution or indemnity among the defendants. See the third paragraph of La.C.C. art. 1804, and Carter v. EPSCO, Inc., supra. However, as between the creditor and the obligors, where one obligor has been released, the Civil Code contemplates a different result. La.C.C. art. 1803 (effective January 1, 1985) provides in part:
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor. (Emphasis added.)
Since the effective date of this article, in delictual actions, the word "portion" has been interpreted to mean the percentage of negligence assessed to the released obligor. See, for example, Lavergne v. Lawtell Gravity Drainage District, 562 So.2d 1013 *1334 (La.App. 3d Cir.1990); Jones v. Johnson, 572 So.2d 150 (La.App. 1st Cir.1990), writs denied with reasons, 576 So.2d 519 (La. 1991); Valet v. City of Hammond, 577 So.2d 155, 161 (La.App. 1st Cir.1991).[2] We find that under our system of comparative fault, this article also requires the quantification of legal fault, or strict liability, as well as negligence.
American Well Service's responsibility stems from its legal relationship with the injury producing instrumentality rather than from any act or omission on its part. Armco had a duty not to introduce a defective product into the stream of commerce. It breached this duty by manufacturing a rope that could not withstand the tension within its own published breaking strength. Between these two actors, Armco was "actually at fault," whereas American Well Service's fault was only technical.
Under these circumstances, we find American Well Service contributed only minimally to Francis' accident. Although an American Well Service employee furnished the defective rope, the defect was created by Armco. We will fix American Well Service's fault at 15% and Armco's at 85%.
As no party has contested the reasonableness of the damages awarded, we will reduce that amount by 15%, the percentage of fault attributable to American Well Service.
For the above reasons, the judgment in favor of the plaintiffs is affirmed and amended in accordance with this opinion. All costs of this appeal are assessed to appellant, Armco.
AFFIRMED AS AMENDED.
NOTES
[1] One argument advanced to defeat solidarity is that American Well Service is Francis' statutory employer, therefore American Well Service cannot be bound in solido with a third party tortfeasor. This argument is probably rendered moot in light of the Supreme Court's recent decision of Williams v. Sewerage and Water Board of New Orleans, 611 So.2d 1383 (La.1993). In any event, we find the record does not support a finding that Francis was a statutory employee of American Well Service.
[2] But see Johnson v. Ford Motor Co., 509 So.2d 1 (La.1987) which was decided under former La. C.C. art. 2203, repealed by Acts 1984, No. 331.